[Civ. No. 9049.   Third Dist.   May 6, 1957.]

ALPHEUS BRIAN, Respondent, v. EVERETT D. IVEY, Appellant.

Keith, Creede & Sedgwick for Appellant.

Robert E. Hatch, Leighton Hatch and Rutledge & Patton for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendant for damages sustained as a result of the flooding of plaintiff's rice crop. The case was tried by the court sitting without a jury and judgment was entered in favor of plaintiff for the sum of $14,275, together with interest from December 31, 1953. Defendant's motion for a new trial was denied and he has appealed from the judgment, his principal contentions being that the evidence is insufficient to support the judgment and that the court erred in awarding interest.

■ It appears from the record that in 1951 one Luchetti bought certain property. The following year, appellant acquired the property adjoining Luchetti on the north side from one Epley. Prior to 1953, neither property was devoted to agriculture, and an artificial lake for duck hunting was created each fall on the Ivey-Epley property and then allowed to dry up during the following spring. The method of getting the water onto the Ivey property was to divert water from the Glenn-Colusa Irrigation District ditch (sometimes called "Hunter Creek"), which was on the south side of the Luchetti property; thence through a short ditch known as the "Ivey Ditch." From the northern end thereof the water flowed openly onto and over the Luchetti property to the extent that it became practically entirely flooded, whereupon by gravity it flowed northerly, over and onto the Ivey property. There it was contained in the form of a lake by the natural depression in the land, and by dikes surrounding it. This arrangement was set forth in a formal written easement binding upon Luchetti when the properties were sold.

In 1952 Luchetti decided he wanted to use his land so as to create an income, whereupon he negotiated a lease with the respondent, Brian, for a period of three years, Brian to grow rice on the land.

Since the duck hunting season would commence before the time to harvest rice and it was necessary to have the Luchetti property dry when the harvesting equipment was at work, Luchetti proposed to appellant that he (Luchetti) would construct a dragline ditch along the eastern margin of the Luchetti property, thereby connecting the Ivey ditch with the Ivey property. Dr. Ivey acceded to this arrangement and such ditch in fact was constructed in 1952, solely at Luchetti's expense.

In the fall of 1952 the ditch was used for running water, without causing any flooding of the adjoining Luchetti property. In the spring of 1953, both properties were dry. During April, Brian used the ditch to flood the Luchetti property preparatory to planting the rice, which he did on May 2nd. The Ivey property remained dry by reason of a dike along the common border of the two parcels and a weir or gate in the ditch where it reached that dike. The standard is 157 days from planting to harvest time, bringing the latter due on October 10th. On September 4th Brian stopped the water running into the ditch and commenced draining the entire property by opening the drain at the south end.

During the month of September Brian visited the property

several times and found it was drying satisfactorily. During that same time other disinterested persons visited the property and saw that it was dry enough for the harvesting equipment to get in. Brian was only waiting for the rice to fully mature on October 10th.

During the summer of 1953 Luchetti had had a conversation with Dr. Ivey in which Dr. Ivey suggested that he was going to attempt to create a new lake on the westerly end of the Ivey property. The west side of this property was higher than the east side and had always theretofore been dry. Dr. Ivey then made four separate indentations on his property by the use of levees and planned thereby to put water in his east lake and his west lake and then force it into the center, which he would never have been able to do without the canal.

On September 23, 1953, Dr. Ivey wrote a letter to the irrigation district. Therein he requested that arrangement be made, if possible, to enable him to run water through the dragline ditch in the near future and stated his awareness of Brian's rice crop and the need to exercise caution in order that the water not damage the rice. Dr. Ivey sent a copy of this letter to Brian. Somewhere around that time Dr. Ivey started the water running and then departed for Alameda County to take care of his practice, leaving the water flowing and unattended.

On October 1st Brian found his crop inundated. Neither Brian nor Luchetti attempted to turn off the valves. The water was finally shut off on October 12, 1953. Brian testified that he tried to save his crop by the purchase of a full track harvester better able to cope with swampy conditions, at a cost of $10,000, but most of the crop was lost.

In contending for a reversal of the judgment appellant argues that the water which flooded respondent's rice crop escaped from the ditch through cracks and muskrat holes, that the proximate cause of the damage to respondent was respondent's failure to properly construct and maintain the ditch, and that appellant had no duty to ascertain that the ditch was leak-proof or free from muskrat holes. Appellant argues earnestly that where an easement has been altered by the servient owner the duty of maintenance and repair rests upon such servient owner and that, therefore, respondent as the lessee of the servient owner with knowledge of the pre-existing easement and the substitution therefor of the dragline ditch, was obligated to maintain the ditch in good repair. However, in the instant case, not only does it appear that

the appellant as the dominant owner consented to the alteration of the easement, but it also appears that such an alteration was beneficial to the appellant if properly maintained.

In reply respondent points out that there was evidence that the ditch was in good repair when appellant started to use it, that it was used without seepage just before the end of September, 1953, indicating that the muskrat holes were made during appellant's operation of the ditch. Respondent argues that appellant was careless and negligent in turning the water into the ditch and then going away to Alameda County, leaving the water running in the ditch without anyone to watch it, and the trial court found that appellant was careless and negligent and that appellant "well knew or reasonably should have known that by causing or allowing such water to so flow that it would flow over and upon said plaintiff's lands, flooding the same and said rice, and that thereby it would destroy said crop of rice and also make it impossible for plaintiff to harvest and remove any of same from said lands. At said last mentioned time, said Ivey well knew that plaintiff then was not present at or near said plaintiff's lands, that plaintiff did not know of Ivey's said running of water and that plaintiff had no means of protecting and would not be able to protect himself and his said property from said damage."

We are satisfied that there is ample evidence to support the court's finding that the damage to respondent's rice was caused by the negligence of appellant. Under the evidence in the case the court could hardly have held otherwise. The record shows that there were many muskrats in that area and that after water is turned into a ditch muskrats frequently start digging holes, and unless there is someone to fill the hole water will leak out of the ditch. For appellant to start the water running in the ditch and then depart for Alameda County leaving the water flowing and unattended was conduct which the court was fully justified in finding to be careless and negligent.

Appellant's final contention that the court erred in allowing interest on the amount of damages must be sustained. Section 3287 of the Civil Code provides:

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except

during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. . . ."

In *Lineman* v. *Schmid*, 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380], interest was disallowed prior to judgment on breach of a contract to deliver flour. The court stated:

". . . The rule appears to be uniform . . . that interest is not allowable when damages cannot be computed except on conflicting evidence . . . because of the absence of established or reasonably ascertainable market prices or values. In such cases, since the amount of damages cannot be resolved except by accord, verdict or judgment, interest prior to judgment is not allowable."

In *California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474 [289 P.2d 785, 49 A.L.R.2d 496], the action was by the seller against the buyer for the sugar beets sold and delivered. It was held that interest prior to judgment was not allowable where the plaintiff stated in its complaint that the value of the sugar beets was $45,000, but the actual judgment was for only $25,768.34, which conformed to the buyer's interpretation of the price. The court stated at page 488:

". . . Difficult questions of the intention of the parties as to price and their prior dealings . . . would have to be tried out before it could be said with certainty what the price of the beets delivered should have been."

The record shows that there was considerable conflicting testimony as to the probable yield of respondent's rice crop, the quality of the crop, and as to harvesting costs. It is clear that the damages could not be computed except on conflicting evidence and it was therefore error for the court to allow interest.

The judgment is modified by striking out the item of interest in the sum of $1,436.83. As so modified the judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.