[Civ. No. 10001.   Third Dist.   Oct. 23, 1961.]

ALPHEUS BRIAN, Appellant, v. EVERETT D. IVEY,
Respondent.

Robert E. Hatch, Leighton Hatch and Rutledge & Patton for Appellant.

Devlin, Diepenbrock & Wulff for Respondent.

WARNE, J. pro tem.* — Plaintiff brought this action against defendant to recover damages allegedly caused by the negligent flooding of plaintiff's rice lands in the year 1954. The court sitting without a jury rendered judgment in favor of defendant, and plaintiff has appealed.

It appears from the record that one Luchetti and the defendant, Dr. Ivey, owned adjoining property, and that prior to 1953 neither property was devoted to agricultural use. An artificial lake for duck hunting was created each fall on the Ivey property and then allowed to dry up after the duck season. Water from the Glenn-Colusa Irrigation Ditch was diverted at the south side of the Luchetti property; then it flowed through a short ditch known as the "Ivey Ditch" from the northern end thereof openly onto and over the Luchetti property to the extent that it became practically flooded and by gravity it then flowed northerly over and onto the Ivey property, where it formed a lake. This arrangement was set forth in a former written easement binding upon Luchetti when the properties were acquired.

In 1952 Luchetti leased the land to plaintiff Brian for a period of three years to grow rice.

In order that plaintiff Brian might grow rice on the leased property, Luchetti, with defendant's consent, had a dragline ditch constructed through which defendant could get water for his duck lake without having to flood the leased property. However, in 1953 seepage and overflow from the ditch ruined plaintiff's rice crop and he recovered damages from the

---

*Assigned by Chairman of Judicial Council.

defendant therefor. (*Brian* v. *Ivey*, 150 Cal.App.2d 691 [310 P.2d 492].)

Plaintiff contends that, as a matter of law, defendant was negligent; that the prior judgment is res judicata as to the defendant's liability; and that as a matter of principle the judgment herein should be made to conform to the former judgment. None of these contentions is meritorious as the factual situation in 1953 was materially different from that in 1954.

The record, when viewed, as it must be, in the light most favorable to the defendant, shows that after his experience with the ditch in 1953 defendant sought to avoid a repetition by terminating his temporary acceptance of the Luchetti-Brian ditch as a substitute for his prior rights to take the water via general flooding of the Luchetti property. However, since plaintiff had again planted the property to rice without notice to defendant, defendant notified Luchetti and plaintiff that he would attempt to use the ditch again in 1954 so as not to flood the crops. Thus he sought expert advice as to proper precautions and safe use from the former owner of the entire area, who was a practical engineer. As advised, he requested and received a limited flow of water from the irrigation district at the beginning of the duck season, arranging for additional water after harvest of plaintiff's rice. He also employed men to make preliminary repairs of the ditch. He had the ditch patrolled by three hired men, Reed, Young and Clark, throughout the period that he diverted water through it. In 1954 the lake was only "perhaps" half filled, using a head of water in the ditch lower than that used by the plaintiff in the use of the ditch for rice irrigation. There was evidence to show that the water level produced in defendant's west lake was well under the level of the plaintiff's "rice box," the irrigation outlet. Ditch tender Clark testified that there were at all times at least 6 to 8 inches of freeboard at the lowest point of the ditch bank. The water level was reduced by 50 per cent when the ditch tenders were absent. Contrary to plaintiff's testimony, ditch tenders Young and Clark testified that there was in fact no overflow or leakage from the ditch other than seepage of a limited and minor degree from about 3 or 4 feet, staggering out to 10 or 12 feet, or, as another witness put it, "The water that got out would probably have gone 40 or 50 feet out there, tapering from nothing to an inch deep out by the weir." There is also testimony which is contrary to plaintiff's testimony that he (plain-

tiff) drained and dried his field. That evidence was to the effect that there was actually considerable residual waste irrigation water in various areas of the rice field when defendant began to take water through the ditch. There was testimony that plaintiff had not cut completely through the checks so as to drain his rice field; that the remaining "hump" of about 3 inches between the checks would have impeded the flow of water drainage from one check to another. There was also testimony by the witness Fred J. Johnson, a farmer, who leased the Luchetti property in 1959 to grow rice, that his engineering studies disclosed a natural ridge running north and south across the property and a low northeasterly corner necessitating ditches, pumps and other facilities not used by plaintiff and without which the rice water could not drain off. Thomas E. Balch, manager of the Providence Irrigation District, testified that he had managed the property in past years and was very familiar with it. He testified that plaintiff's low yield and troubles in harvesting had been shared by every person who had tried to grow rice on the Luchetti property, due to inadequate drainage facilities to dispose of rice water. There was evidence produced on behalf of the plaintiff which was in many respects contrary to that which we have above set forth. However, the weight of the evidence was a matter for the trial court's determination. The evidence amply sustains the trial court's implied findings that it was not true the defendant "so carelessly and negligently operated and maintained said water and ditch that said water then and there did flow from said ditch onto plaintiff's said lands, so that the latter were flooded" and as a result thereof caused damage to plaintiff's rice crop. Findings were waived.

■ ". . . [I]n the absence of findings of fact and conclusions of law, every intendment is in favor of the judgment . . . appealed from and it is presumed that every fact or inference essential to the support of the order [judgment] and warranted by the evidence was found by the court." (*Estate of Rule*, 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319]; *Reid* v. *Valley Restaurants, Inc.*, 48 Cal.2d 606, 609 [311 P.2d 473].)

■ The facts concerning negligence are so entirely different in this action from those in the prior action that it cannot be said that the prior action adjudicated an established negligence in this action. In the former case, defendant made no inspection of the ditch for breaks, muskrat holes, or other

defects which would permit water to escape on plaintiff's land. He merely turned on the water and then departed for Alameda County to take care of his practice as a physician and surgeon, leaving the water flowing unattended. After the judgment in the prior action defendant took proper and reasonable means to prevent any flooding or damage to plaintiff's rice lands resulting from the use of the ditch. Hence the facts concerning negligence in the first case were substantially different from those in this action.

Nor is the doctrine of res judicata applicable to this action. As stated in *Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 P.2d 916] :

". . . A former judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication *as to such issues in the second action as were actually* litigated and determined in the first action." (Italics added.)

In the face of the record as compared to that in the first action, it would be absurd to hold that defendant's conduct in the present action was litigated in the first action.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.