[Civ. No. 8027.   Third Dist.   Jan. 4, 1952.]

ELLIS M. SMITH, Respondent, v. LOUIS P. MENDONSA et al., Appellants.

Peters & Peters for Appellants.

Rawlins Coffman for Respondent.

VAN DYKE, J.—On May 1, 1947, plaintiff and respondent, as promisee, entered into an agreement with defendants and appellants, as promisors, concerning the use of certain real property which had been conveyed by respondent to appellants. Therein they agreed that in the use of their property they would permit no trees to remain thereon which exceeded a height of 15 feet; that should any tree attain a greater height respondent would have the right to remove the same. It was stated that the purpose of the agreement was to prevent the improper shading of respondent's contiguous land and to prevent trees on the appellants' property from overhanging it. It appeared that respondent was, when the agreement was made, and ever since had been devoting his property to orchard purposes. Appellants on their land have been conducting a gas station, a restaurant and a bar. The trial court rendered judgment awarding respondent damages for past violations of the agreement in the sum of $425 and perpetually enjoining the appellants from maintaining upon their property any tree in excess of the stipulated height and from permitting branches of any tree to overhang the land of respondent. From this judgment this appeal is taken.

Appellants contend that the proof of damage was insufficient to support the award and that the injunction issued was too severe and should be either set aside or modified.

We are not here concerned with whether or not the promise sued upon constitutes under our code a covenant running with the land of either the promisor or the promisee, since we are here dealing with the original parties to the agreement; and it is not contended that the written agreement in question is in anywise invalid.

Turning first to the contention that the damages are not based upon supporting evidence, but on the contrary are the result of conjecture, the record discloses testimony that the shading of the orchard trees near the appellants' property line was detrimental to the growth of the trees themselves and further would, during some seasons at least, lower the production of fruit upon the affected trees; that there were some 48 orchard trees so affected, amounting to better than half an acre of planting; that these trees had been retarded as to growth and their production lessened. Referring to such cases as *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209 [90 P. 942, 12 Ann.Cas. 779, 12 L.R.A.N.S. 267], and *Morris* v. *George*, 57 Cal.App.2d 665 [135 P.2d 195], ap-

pellants contend that the proof of damage, while it need not be exact yet must give some fairly definite basis for computation, and that with respect to growing crops the measure of damages is the market value of the probable yield without detriment less the cost of producing and marketing and the return actually received. The period of time covered by the award for damages was three years and therefore the damages awarded amounted to approximately $140 per year. We think that the record furnishes adequate support for the award made. The wrong was that of the appellants and they are not in a favored position to urge the technical rules governing awards of damages. The elements of damage here included more than the loss of a crop. In addition to lessened crops during the three years covered by the award, there was the element of retardation of growth of the trees. It is obvious that accurate proof of such damage would be most difficult to produce. ■ The case comes within the rule stated in 25 Corpus Juris Secundum, "Damages," page 815, that when it clearly appears that a party has suffered damage a liberal rule should be applied in allowing a court or jury to determine the amount, and that, given proof of damage, uncertainty as to the exact amount is no reason for denying all recovery. ■ In view of the elements of damage involved and the meager award made, we think the judgment, insofar as it awards damages, must be sustained.

Appellants complain of the severity of the injunction, contending that the court should have balanced the hardships insofar as injunctive relief was concerned and because the damage to respondent was determined to be moderate, whereas the damage to appellants through the infliction of the injunction will be great, the court erred in its ruling. Appellants point to the ornamental value of the trees involved, some of which now stand at a height of better than 60 feet, to the value of shade trees in the area where appellants conduct their business and assert that the enforcement of the injunction will seriously damage their business and all but destroy their means of livelihood. ■ That in cases involving promises as to the use of property, injunctive relief, depending upon the inadequacy of damages may be granted is well settled. (Restatement of the Law of Property, § 528.) ■ It is equally well settled that whether injunctive relief will be granted in a given case is a matter largely within the discretion of the trial court. (Restatement, *id.*) The text referred

544

to under the heading of "Discretionary Character of Injunctive Relief" declares at page 3188:

"The mere fact that a judgment for damages is not as adequate relief from the point of view of the plaintiff as an injunction would be is not wholly determinative of the question as to whether an injunction will be given. A judgment for damages merely shifts to the defendant a harm equal to that which the plaintiff has suffered. This is not true in the case of the issuance of an injunction. The harm to the defendant which may follow the granting of an injunction against him may be entirely disproportionate to the benefit resulting to the plaintiff. The action prohibited by an injunction may have distinct social advantages even though it violates a promise. Hence factors other than the question of inadequacy, from the point of view of the plaintiff, of the remedy of damages must be considered in determining whether an injunction will issue."

■ We think that the trial court acted within its discretion in granting injunctive relief. These factors impel to that conclusion: The contract itself is very clear; the promise made is definite; the purpose is declared to be the prevention of the very damage which ensued when that promise was broken; the damage would not only recur each year but would increase as the trees increased in height and cast longer shadows for a longer time each day. The appellants may have been improvident when they gave their promise, but they gave it and they must have understood its far-reaching consequences, including of course the climatic conditions which they urge upon this court in proof of the hardship inflicted upon them by the injunction. ■ It is not the business of courts, either of law or of equity, to remake contracts fairly entered into by persons who are capable of contracting. On the contrary, it is the duty of courts to encourage the keeping of agreements so made and to give adequate remedy for the breach thereof when it occurs. This is particularly true where the breach is deliberate and the wrong is wilful.

■ Appellants argue that the court did not consider the balance of hardships, but on the contrary granted injunctive relief simply because the agreement was specific and the court could not see why it should not be complied with. The court stated this in substance in its memorandum opinion which has been made a part of the record here, but we do not think that the reasoning of the court was so confined. On the contrary we think that the trial court considered the relative

hardships, but, notwithstanding the hardship to appellants, considered that, in view of the definiteness of the promise, it still ought to be enforced by injunctive process.

■ The contract as written contained a statement that it was the purpose of the agreement to prevent the improper shading of respondent's land and the overhanging of the appellants' trees. From this the appellants argue that the real issue was not whether or not the trees had been permitted to grow to a height in excess of the stipulated height of 15 feet or had been permitted to overhang, but whether or not the result was an injurious shading of repondent's land. At the trial appellants requested that the court appoint a commissioner to determine to what height appellants' trees might grow or overhang without damage to respondent. This request was refused, the court taking the view that the parties had contracted definitely as to the height and must abide by their agreement. We think in this that the court was correct. The contract very clearly sets the permissible height and provides that no overhanging shall be permitted. In view of the clarity of the contractual promise, we cannot construe the language concerning the purpose as a limitation thereon or as putting at large what was definitely agreed upon.

The judgment appealed from is affirmed.

Adams, P. J., and Schottky, J., pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 3, 1952. Schauer, J., was of the opinion that the petition should be granted.