[L. A. No. 23650. In Bank. Nov. 8, 1955.]

CALIFORNIA LETTUCE GROWERS, INC. (a Corporation), Respondent, v. UNION SUGAR COMPANY (a Corporation), Appellant.

Richard E. Guggenheim, Eugene S. Clifford, Heller, Ehrman, White & McAuliffe and Twitchell & Rice for Appellant.

O'Melveny & Myers, William L. Scott, Pierce Works, Lewis, Grant & Davis and Dennis O'Rourke as Amici Curiae on behalf of Appellant.

Schauer, Ryon & McMahon and Robert W. McIntyre for Respondent.

SHENK, J.—This is an appeal from a summary judgment for the plaintiff. The pleadings and affidavits in support of the motion for the judgment disclose that the controversy arises from the contractual relations of the parties in the sale and purchase of sugar beets during the years 1945 to 1949 inclusive.

On November 1, 1945, the defendant Union Sugar Company leased to California Lettuce Growers approximately 1,000 acres of land situated in Santa Barbara and San Luis Obispo counties for a three-year term. Rent for the first two years was fixed in the lease; for the third year the rent was to be determined by arbitration in the absence of an interim agreement between the parties. The lease provided that the lessee should apply a minimum of 14 tons of manure per acre during the term of the lease.

On the same day the parties entered into a so-called growing agreement whereby California Lettuce agreed to grow and deliver sugar beets to Union Sugar from 500 acres during 1946, the same amount in 1947 and from 400 acres in 1948. This agreement was silent as to price, terms of payment, place and manner of delivery, and contained no express

promise on the part of Union Sugar to accept delivery and buy the beets. On November 1, 1947, the parties entered into an agreement to fix the rental for 1948 and extend the lease an additional year to include the crop period of 1949. The rental for this period was left to future determination. This agreement also provided that California Lettuce would apply at least seven additional tons of manure per acre over the minimum required by the original lease.

Two more agreements were entered into on November 1, 1948. In the first, the parties agreed to release 400 of the original 1,000 acres subject to the lease of 1945 as extended. The rent for the remaining 600 acres was fixed for the 1949 crop season. The second was a growing agreement obligating California Lettuce to grow and deliver beets to Union Sugar from 239 acres during 1949. This growing agreement, like its predecessor, failed to specify price, terms of delivery or obligation of Union Sugar to accept delivery and purchase the beets.

In 1946, 1947 and 1948 California Lettuce grew the sugar beet acreage pursuant to the growing agreement of November 1, 1945, and delivered the contract beets to Union Sugar. In each of those years printed supplemental purchase agreements were concluded by the parties. For the 1946 and 1947 crops the supplemental agreements set a flat purchase price per ton of beets based on their sugar content. The 1948 supplemental purchase agreement contained a price schedule based not on a flat price per ton but on a formula based upon the net return to Union Sugar from the processed beet sugar. No supplemental purchase agreement was consummated by the parties for the 1949 crop.

The lease, growing, and supplemental purchase contracts were fully performed by both parties during 1946, 1947 and 1948. In 1949, under the growing agreement contemplating the delivery of 239 acres of beets, California Lettuce delivered only 117 acres. In a letter to California Lettuce dated December 13, 1949, Union Sugar recognized its debt in the amount of $27,300.78 for the beets so received, but it refused to pay this full value because of the following setoffs: (1) The failure of California Lettuce to deliver beets from the full 239 acres under the growing agreement for 1949; (2) the failure of California Lettuce to apply the additional manure contemplated in the 1947 rental agreement; (3) an unpaid debt for sale and delivery of certain manure; (4) charges due and owing for use of a pumping plant, and (5) charges

for the use of other acreage. If these setoffs were accepted by California Lettuce, the balance owed by Union Sugar would be $3,825.95. Union Sugar subsequently tendered payment of that amount but California Lettuce refused to accept it. After the present action was commenced, Union Sugar tendered to California Lettuce the sum of $2,355.09 which was accepted on account.

Refusing the offsets, California Lettuce commenced this action on January 11, 1950, to recover the reasonable value or the contract price of the 117 acres of beets delivered to Union Sugar or damages for breach of contract. The first amended complaint states the first count in assumpsit for the reasonable value of the beets sold and delivered in the amount of $45,000. In the second and third causes of action, California Lettuce alleges breach of contract and damages in the sum of $29,655.37. Each cause of action admits the receipt of $2,355.09 actually paid by Union Sugar.

Union Sugar answered and counterclaimed. It admitted liability in the amount of $29,655.87, less $2,355.09 paid on account and less the setoffs pleaded in five counterclaims. The first counterclaim alleged damages in the sum of $7,412.45 resulting from the failure of California Lettuce to deliver the full 239 acres of beets. The second counterclaim alleged a $14,529.94 debt owed Union Sugar for the failure of California Lettuce to apply the additional manure as required by the 1947 lease extension. California Lettuce demurred to the first and second counterclaim and its demurrer was sustained.

In the affidavit in support of its motion for summary judgment California Lettuce accepted Union Sugar's statement that the reasonable value of the beets sold and delivered in 1949 was $29,655.87, waiving any additional amounts those beets might reasonably be worth. For purposes of the motion, California Lettuce conceded Union Sugar's third, fourth and fifth counterclaims, totalling $1,532.45 and the sum of $2,355.09 paid on account, leaving a balance of $25,768.34.

The trial court found that Union Sugar's first and second counterclaims did not state facts sufficient to constitute a valid setoff against the first amended complaint. Union Sugar's demurrer to the amended complaint was overruled. The demurrers to the first and second counterclaims were sustained without leave to amend. October 19, 1953, the trial court accordingly gave summary judgment on the pleadings to

California Lettuce in the amount of $25,768.34 with interest from December 13, 1949, in the sum of $6,942.49.

Union Sugar contends that its first and second counterclaims state valid setoffs; that its debt to California Lettuce, if any, was unliquidated and interest was not allowable, and that the judgment is contrary to law.

In support of the first counterclaim, Union Sugar alleges that California Lettuce violated the growing agreement of November 1, 1948, with respect to the 1949 crop in that California Lettuce delivered only 117 acres of beets while the contract called for delivery of 239 acres. The contract provides that California Lettuce ". . . personally grow, on suitable land in Santa Maria Valley, and deliver to (Union Sugar) two hundred thirty-nine (239) acres of beets during the year 1949." California Lettuce contends that this agreement lacks mutuality, is illusory and void because there is no provision for price, time and place of delivery and no duty on Union Sugar to accept delivery and pay for the beets.

The principal question is whether the contract is illusory and void for failing to stipulate the purchase price. California Lettuce argues that the contract leaves the price to the future discretion of one party and therefore lacks mutuality. █ Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. (See Civ. Code, § 1598; *Sutliff* v. *Seidenberg, Stiefel & Co.*, 132 Cal. 63 [64 P. 131, 469].) █ If the price of a commodity in a sales contract is intended to be left to the subsequent agreement of the parties, the purported contract is merely an agreement to agree and therefore *nudum pactum* until the price is fixed or agreed upon. (See *Schimmel* v. *Martin*, 190 Cal. 429 [213 P. 33]; *Avalon Products, Inc.* v. *Lentini*, 98 Cal.App.2d 177 [219 P.2d 485]; *Jules Levy & Bro.* v. *A. Mautz & Co.*, 16 Cal.App. 666 [117 P. 936].) Unless the court has ascertainable provisions of agreement before it, there is no contract on which the court may act. █ However, "The law does not favor but leans against the destruction of contracts because of uncertainty; and it will. if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained." (*McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546, 549 [213 P. 971]; see *Roy* v. *Salisbury*, 21 Cal.2d 176 [130 P.2d 706]; *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386]; *Sutliff* v. *Seidenberg, Stiefel & Co.*,

*supra*, 132 Cal. 63.) Unexpressed provisions of a contract may be inferred from the writing or external facts. Thus it is well settled that a contract need not specify price if it can be objectively determined. Section 1729 of the Civil Code recognizes three ways of determining price. It can be fixed by the parties, determined from the prior course of dealings of the parties, and if these procedures are inapplicable, the contract price may be deemed the reasonable price under the circumstances of the particular case. The absence of price provisions does not render an otherwise valid contract void. (Civ. Code, §§ 1728, 1655, 1656; *Great Western Distillery Products, Inc.* v. *John A. Wathen Distillery Co.*, 10 Cal.2d 442 [74 P.2d 745].) Unless the parties intended to leave the determination of price to future negotiations, courts should make the necessary findings and set the price under the applicable code provisions.

In the present case Union Sugar alleges that ". . . the parties knew and understood that it was the standard practice of defendant to enter into separate supplemental and specific sugar beet contracts with each of its growers for the respective years in which the beets were to be grown." Pleaded with the history of the parties' commercial transactions, this allegation is sufficient to put the prior dealings of the parties and the practice of the industry in issue.

In *Buckner* v. *Leon & Co.*, 204 Cal. 225, it was said at page 227 [267 P. 693]: "It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract," quoting from *Hind* v. *Oriental Products Co.*, 195 Cal. 655, 667 [235 P. 438]. (See Civ. Code, §§ 1655, 1656; Code Civ. Proc., § 1870, subd. 12; 12 Cal.Jur.2d, Contracts, § 140.)

As stated, the 1949 crop growing contract was preceded by dealings between the parties as far back as 1945. The 1946 and 1947 price and delivery terms were set in printed supplemental agreements which determined a flat price per ton of beets graduated on the basis of their sugar content. In 1948 this per ton pricing formula was replaced by the so-called scale or "net return" contract in wide use throughout the sugar beet industry. Under this type of agreement, the grower is paid for his beets according to the sugar content

upon the basis of the net return from the sugar sold by the processor during the current crop year. The 1948 supplemental price agreement provided: "The 'net return of Company' as used herein means the average net selling price actually realized by Company per 100 lbs. for 1948 crop sugar sold and delivered during the period August 1, 1948, to July 31, 1949, and shall be computed in accordance with the established system of accounting of Company by deducting from the gross selling price actually realized by Company for such sugar all such charges and expenditures as are regularly and customarily deducted by, and as determined by Company. . . . The average net selling price of Company, determined as aforesaid, shall be verified by a firm of independent public accountants chosen by the Company, which verification shall be conclusive."

■■ Thus California Lettuce entered into the 1949 growing agreement with knowledge that it was the industry's usage and custom for each processor to enter into uniform supplemental contracts with all growers who supplied it with beets and that Union Sugar purchased on the same terms from all growers. In the absence of a contrary showing, it can fairly be concluded that the parties fully understood when they entered the 1949 growing agreement that California Lettuce would deliver its 1949 crop to Union Sugar under the same terms as were made uniformly available by Union Sugar to all growers from which it purchased sugar beets. This represents a sufficient pattern of prior dealing to support the conclusion that the parties intended the 1949 crop to be governed by the procedure previously followed.

■■ By failing to voice its intention to adopt a different procedure, if indeed it entertained such an intention, California Lettuce induced Union Sugar to rely upon the conclusion that the established pattern of pricing would prevail for the 1949 crop. California Lettuce should not now be permitted to deny the effect of that prior course of dealing.

■■ California Lettuce contends, however, that the 1948 "net return" formula cannot be used as a basis for determining price because it also is illusory and renders the contract void. It argues that this formula is unilateral and lacks mutuality. This contention is not persuasive. The "net return" formula is sufficiently definite to satisfy the requirements of certainty and mutuality. While the accounting procedures adopted are those of Union Sugar, the contract specifically provides that the accounting procedures are "the

established accounting system of Company." Thus Union Sugar may not alter its accounting system for the purpose of varying the resulting "net return" figures. Since the parties contracted with reference to an existing accounting system, California Lettuce may not now claim that the accounting procedures are unilateral and unfair. The contract, moreover, expressly calls for verification of the average net selling price by an independent firm of public accountants chosen by the Union Sugar. While Union Sugar has the sole power to select the accounting firm, the duty to select an "independent" firm adequately protects California Lettuce from arbitrary action. In any event, where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. (Civ. Code, §§ 1655, 1656; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 771 [128 P.2d 665]; *Brogdex Co.* v. *Walcott*, 123 Cal.App.2d 575 [267 P.2d 28]; *Brawley* v. *Crosby etc. Foundation, Inc.*, 73 Cal.App.2d 103 [166 P.2d 392].) The duty to exercise good faith would also combine with the commercial interests of Union Sugar to maximize its profits to overcome California Lettuce's objection that the agreement does not impose a duty on Union Sugar to sell at the prices best obtainable in the sugar market.

 As applied to the 1949 crop, the 1948 supplemental agreement can be considered to leave open the precise amount that Union Sugar must pay per ton of beets. However adjusted to the "net return" to Union Sugar and the sugar content of the beets, the actual payment due could be changed from year to year by Union Sugar. This feature of the prior course of dealing of the parties probably leaves to Union Sugar the power to set the ultimate price paid to California Lettuce. But this pricing feature should not make the contract illusory and void. Civil Code, section 1611, provides: "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth."

 Professor Williston says "Even an agreement that the price shall be fixed by an interested party is valid if his interest is known and there is no bad faith." (1 Williston on Sales (rev. ed.) § 167, p. 434-435; see Civ. Code, §§ 1729, 1655, 1656.) In the present case the actual discretion of

Union Sugar in setting the purchase price is limited both by the fact that Union Sugar must charge California Lettuce no more than it charges other growers generally and by the limits prescribed by the United States Secretary of Agriculture under the Sugar Act of 1948 (61 Stats. 922, 7 U.S.C.A. §§ 1100-1160.) Regulation of the sugar industry by the United States Department of Agriculture pursuant to the Sugar Act of 1948 places effective limits upon the purchase price under growing agreements similar to the contracts involved in the present case. It also appears that the prices set for the 1949 crop were identical with those set for the 1948 crop accepted by the parties and adopted in the 1948 supplemental agreement.

 Nor does the 1949 growing agreement lack mutuality for failing expressly to obligate Union Sugar to accept delivery and to purchase the beets. The obligation to purchase must be inferred from the agreement in the absence of a showing of a contrary intention of the parties. (*King-Keystone Oil Co.* v. *San Francisco Brick Co.,* 148 Cal. 87 [82 P. 849]; *Preble* v. *Abrahams,* 88 Cal. 245 [26 P. 99, 22 Am. St.Rep. 301]; see *Samuels* v. *Ottinger,* 169 Cal. 209 [146 P. 638, Ann.Cas. 1916E 830].) In the present case the intention of the parties to bind Union Sugar to accept and purchase the beets must be inferred from the prior dealings of the parties. The transactions relating to the 1946, 1947 and 1948 crops show without question that the parties expected the 1949 growing agreement to obligate Union Sugar to purchase and accept delivery of the contract beets. The contrary view, urged by California Lettuce, invites the untenable conclusion that one party agreed to sell but the other did not agree to purchase. The languge of the agreement clearly contemplates a "purchase" as well as a "sale."

 The contention of California Lettuce that the agreement is fatally defective in not stating the time, place and manner of delivery cannot be sustained. This question is resolved against California Lettuce by section 1763 of the Civil Code which supplies the rules for determining the time, place and manner of delivery when those matters are not otherwise controlled by the contract or the dealings of the parties.

It must therefore be concluded that the trial court improperly sustained the demurrer to the first counterclaim.

 Union Sugar's second counterclaim, as stated, alleged damages in the amount of $14,529.94 occasioned by

the failure of California Lettuce to apply seven tons of manure to each of the 239 acres of Union Sugar's land under cultivation. This claim arose out of the lease extension agreement of November 1, 1947, which provided: "(4) That Lessee will apply a minimum of seven tons of steer manure per acre upon the leasehold premises in addition to the minimum fourteen tons per acre required in the existing lease, the amount of manure to be applied to any particular area and the time of its application to be at the sole discretion of the lessee." Despite this discretion expressly conferred on California Lettuce in the agreement, Union Sugar's counterclaim is based on a construction of the agreement requiring California Lettuce to apply the manure during the term of the lease extension, that is, any time between November 1, 1948, and October 30, 1949. The parties undoubtedly intended that California Lettuce should have the right to choose the time to apply the manure in accordance with its convenience in growing the beets. If fertilization of the land is required at particular times, custom or the prior dealings of the parties should be shown. These are matters which would ordinarily be resolved as questions of fact during the course of the trial and not as questions of law on the demurrer or motion for summary judgment.

Union Sugar alleges that the damages it suffered from the failure of Californa Lettuce to apply the manure are the cost of the manure and the expense of application. California Lettuce argues that the manure was to be applied to land on which it grew its crop, making the damages, if any, result to California Lettuce, not to Union Sugar, the lessor. Union Sugar concedes that the damages are difficult to ascertain with precision, but it contends that when liability is shown it is not necessary for the injured party to plead his damages with arithmetical exactness where the nature of the injury makes this impossible. Section 3300 of the Civil Code anticipates this kind of problem where it states that the measure of damages ". . . is the amount which will compensate the party aggrieved for all the detriment proximately caused . . . or which, in the ordinary course of things, would be likely to result . . ." from the breach of contract. In *Smith* v. *Mendonsa,* 108 Cal.App.2d 540, in dealing with a similar problem the court said at page 543 [238 P.2d 1039] ". . . when it clearly appears that a party has suffered damage a liberal rule should be applied in allowing a court or a jury to determine the amount, and that, given proof of damage, un-

certainty as to the exact amount is no reason for denying all recovery." ▉ While Civil Code, section 3301, provides that no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin, the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery. (See *Stott* v. *Johnston*, 36 Cal.2d 864 [229 P.2d 348, 28 A.L.R.2d 580]; *Long Beach Drug Co.* v. *United Drug Co., supra,* 13 Cal.2d 158; *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232 [73 P.2d 1163]; *Meyers* v. *Texas Co.,* 6 Cal.2d 610 [59 P.2d 132]; *Holt Mfg. Co.* v. *Thornton,* 136 Cal. 232 [68 P. 708]; *Allen* v. *Gardner,* 126 Cal.App.2d 335 [272 P.2d 99]; *Smith* v. *Mendonsa, supra,* 108 Cal.App.2d 540.) It follows that the second counterclaim was sufficiently definite as to the injury and the measure of damages to withstand attack by demurrer and motion for summary judgment.

It remains to determine whether the trial court properly allowed California Lettuce the sum of $6,942.49 interest on the $25,768.34 found to be due and owing for delivery of the 117 acres of beets to Union Sugar. ▉ The prevailing party is entitled to interest on the amount of his judgment where the damages are certain, or capable of being made certain by calculation, and the right of recovery is vested in him upon a particular day. (Civ. Code, § 3287.) ▉ California Lettuce correctly contends that the mere pleading of unliquidated counterclaims does not render unliquidated an otherwise certain or determinable debt owing to the plaintiff. The unliquidated counterclaims are given treatment as discounts, not as payments made at the time the debt is due. (*Lineman* v. *Schmidt,* 32 Cal.2d 204 [195 P.2d 408, 4 A.L.R.2d 1380]; *Hansen* v. *Covell,* 218 Cal. 622 [24 P.2d 772, 89 A.L.R. 670].) They do not therefore affect the liquidated or unliquidated character of the debt.

▉ The trial court allowed the interest on the ground that Union Sugar fixed the amount due in its statement to California Lettuce of December 13, 1949. The statement, setting the amount owed at $27,300.78, was rejected by California Lettuce. In the first cause of action stated in its complaint, California Lettuce sought on a common count to recover $45,000 which it alleged to be the reasonable value of the beets delivered to Union Sugar. This allegation controverts Union Sugar's statement of the amount due. Not until its motion for summary judgment did California Let-

tuce concede the accuracy of Union Sugar's statement. Under these circumstances it is impossible to conclude fairly that the claim was certain at the time Union Sugar tendered its statement. Nor can it be said that the reasonable or fair market value is readily ascertainable in the present case. (See *Lineman* v. *Schmidt, supra,* 32 Cal.2d 204.) Difficult questions of the intention of the parties as to price and their prior dealings above mentioned would have to be tried out before it could be said with certainty what the price of the beets delivered should have been. Hence it was improper to allow interest from the date of Union Sugar's statement.

Under the foregoing circumstances the trial court erred in granting the plaintiff's motion for summary judgment. Section 437c of the Code of Civil Procedure provides: ". . . if it is claimed that there is no defense to the action or that the action has no merit, on motion of either party . . . supported by affidavit of any person or persons having knowledge of the facts, the answer may be stricken out or the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact." The issue to be determined by the trial court in consideration of the motion under section 473c is whether the ". . . defendant has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case." (*Coyne* v. *Kremples*, 36 Cal.2d 257, 260 [223 P.2d 244]; *Gardner* v. *Jonathan Club*, 35 Cal.2d 343 [217 P.2d 961]; *Hardy* v. *Hardy*, 23 Cal.2d 244 [143 P.2d 701]; *Eagle Oil & Refining Co.* v. *Prentice*, 19 Cal.2d 553 [122 P.2d 264]; *Walsh* v. *Walsh*, 18 Cal.2d 439 [116 P.2d 62].) The defendant's first and second counterclaims present questions of the parties' intentions upon embarking upon their contractual relations with each other, their prior dealings and certain trade practices. Since these matters are questions of fact on which evidence should be taken, it is clear that the present case is not a proper one for granting summary judgment. (See *Walsh* v. *Walsh, supra,* 18 Cal.2d 439; *Travelers Indem. Co.* v. *McIntosh,* 112 Cal.App.2d 177 [245 P.2d 1065]; *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609 [152 P.2d 774].)

The order sustaining the demurrers to the first and second counterclaims, the order granting the motion for summary

judgment and the allowance of interest were erroneous. The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Spence, J., and Mussell, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.