17 Cal.Rptr. 95]

[Civ. No. 6712. Fourth Dist. Nov. 14, 1961.]

HENRY J. WATERS, Plaintiff and Respondent, v. DORIS G. WATERS, Defendant and Appellant.

Yale, Wilson, Summers & Yale for Defendant and Appellant.

McInnis, Focht & Fitzgerald for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant obtained a divorce from plaintiff-respondent in 1948. In a property settlement agreement, the wife received a life estate in two separate parcels of land, referred to as the C Street property and the Broadway property. The minor child of the parties was given the remainder interest in the properties. Concurrent therewith, the wife leased both parcels to her husband, plaintiff herein, on a 35-year term basis for a single sum which ultimately became fixed at $275 per month for both parcels. The lessee agreed to pay all taxes and certain other charges. Plaintiff herein subleased the parcels separately, receiving $400 for the C Street property and $600 for the Broadway property, totaling $1,000 per month.

In 1958, the State of California commenced proceedings to condemn the C Street property for highway purposes. Each of the parties, by mutual agreement, employed separate attorneys to defend the action and to secure the greatest amount possible for the property and the leasehold interest. Negotiations were carried on between the respective parties, respective counsel and the State of California in reference to a settlement. On May 2, 1958, counsel for Mrs. Waters wrote

to Henry J. Waters that it would be advisable to make a definite offer to the state and, among other things, said that:

"1. She will agree to a settlement of $65,000.00 or more for the entire lot and building, provided you agree with her that the entire award will be split equally between Mrs. Waters as owner and you as lessee and that settlement is made within the next thirty days.

"2. The lease will be modified or amended after the State takes the one lot to provide for a rental for the remaining lot of two-thirds of the existing rental, or the sum of $183.33 per month, based on the present rentals you are getting for the two lots.

" . . . . . . . . . . . .

"APPROVED:

"Doris Waters"

It does not appear that Mr. Waters directly replied to this communication. On June 12, 1958, Mr. Dowds, the wife's attorney, wrote to the husband's attorney, Mr. Focht, about preparation for trial of the condemnation proceedings. Therein he stated: "Since Mr. Waters has been calling and writing to me directly, I wrote him a letter on May 2 agreeing to accept his offer of a fifty-fifty split on the award between him and Mrs. Waters and her son, but have had no confirmation thereof since that date."

He asked for a confirmation as to whether Mr. Waters "will definitely agree to a fifty-fifty split on the award irrespective of the amount finally received." Mr. Focht, in answer to this inquiry, on June 16, replied that: "Mr. Waters has authorized me to advise you that he will agree to a 50-50 split on the award, irrespective of the amount received."

On June 17, Mr. Dowds wrote Mr. Focht:

"I hasten to acknowledge receipt of your letter of June 16 wherein you state that Mr. Waters has agreed to a fifty-fifty split on the award irrespective of the amount received. While Mrs. Waters is not too happy about the matter, I, as her attorney, know that that is a fair and reasonable settlement between her and Mr. Waters."

Upon this basis, the respective parties received their remuneration from the State of California and the question then arose as to the manner of modifying the lease in respect to payments of rent on the Broadway property and the amount thereof. It is plaintiff's contention that as a part of the consideration for the agreement to sell the property and

divide the proceeds, it was agreed that the rental under the lease would be reduced on a prorate basis. Defendant claimed she signed no such agreement and demanded the $275 rental provided in the lease. There was introduced in evidence a letter written by Mr. Waters to his wife's counsel on February 23, 1959, stating that he felt a fair judgment would be to "halve the present total rent," making it $137.50 per month. Plaintiff explains this letter as showing that defendant erred in making the calculations in her letter on a prorate basis of the two rentals he was receiving as being $183.33 per month when in fact such prorate basis would be $165, and that this lower offer was in contemplation of settlement of a rate fixed on a prorate basis. The trial court, in passing upon whether there was an acceptance of the offer made by Mrs. Waters, considered this letter and found that the letter of May 2 constituted an offer on her part to sell the property and adjust their rental agreement on a prorate basis, and that the acceptance of the sums paid by the State of California constituted consideration for the agreement that the lease then in existence was to be modified on a prorate basis; that the consideration was inseparable and "sort of a package deal" and that the additional letter written by Mr. Waters was only an attempt to reach a prorate amount which they had agreed upon and that his attempt "to do a little horse-trading" didn't destroy the contractual obligation to negotiate and adjust the rent in accordance with their agreement. It then definitely found that there was a contract to reduce the rental agreement in accordance with the formula prescribed and that that sum was $165 per month. It appears to us that there is evidence to support the finding of the trial court in this respect.

Defendant, however, argues that it is not the province of the trial court to make a contract for the parties (citing *Nourse* v. *Kovacevich*, 42 Cal.App.2d 769 [109 P.2d 999]); that there is no evidence that plaintiff and defendant agreed upon an apportionment or reduction of rent and it is further argued that in the absence of a contractual provision between the lessor and lessee, apportionment of rent will not be made where there has been a partial taking of the leasehold premises by condemnation. (Citing *City of Pasadena* v. *Porter*, 201 Cal. 381, 387 [257 P. 526].) Assuming that the lease was properly modified under the new agreement whereby the parties settled their respective rights and the amount of rent to be paid, the rule cited in *City of Pasadena* v. *Porter, supra,* would not be applicable.

██ Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together. (Civ. Code, § 1642; *Symonds* v. *Sherman,* 219 Cal. 249, 253 [26 P.2d 293].) ██ A series of writings is to be construed together in arriving at the total understanding of the contracting parties. (*Katemis* v. *Westerlind,* 120 Cal.App.2d 537 [261 P.2d 553].) ██ "In cases of uncertainties in a contract, it is to be interpreted most strongly against the party who causes the uncertainty to exist." (*Boring* v. *Filby,* 151 Cal.App.2d 602, 605 [311 P.2d 869].) ██ The law leans against the destruction of contracts because of uncertainties and favors the construing of agreements so as to carry into effect the reasonable intention of the parties. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496].) ██ Unexpressed provisions of a contract may be inferred from the writing or external facts. (*California Lettuce Growers, Inc.* v. *Union Sugar Co., supra.*)

██ Both parties, in their complaint and answer, admitted a controversy did exist as to their obligations under the agreement, and both sought a construction of the agreement and declaration of their respective rights. The conclusion reached appears to us to be fair and reasonable and the trial court's finding that the parties, for an adequate consideration, mutually agreed that the rental should be prorated and be reduced to $165 per month has sufficient evidentiary support.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.