[No. B192900. Second Dist., Div. Two. Mar. 18, 2010.]

DILLINGHAM-RAY WILSON, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent;
CBI SERVICES, INC., Real Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

## Counsel

Watt, Tieder, Hoffar & Fitzgerald, Gregory J. Dukellis, Jared M. Wayne; Monteleone & McCrory, Patrick J. Duffy III and Andrew W. Hawthorne for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Michael L. Claessens, Assistant City Attorney; Greines, Martin, Stein & Richland, Irving H. Greines, Feris M. Greenberger, Peter O. Israel; Akerman Senterfitt, Nowland C. Hong, Thomas J. Casamassima and Michael S. Simon for Defendant and Respondent.

Dennis J. Herrera, City Attorney, Danny Chou, Chief of Complex and Special Litigation, and Kathleen Morris, Deputy City Attorney, for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

Kirkpatrick & Lockhart Preston Gates Ellis, Timothy L. Pierce and Hector H. Espinosa for Real Party in Interest and Respondent.

## Opinion

**ASHMANN-GERST, J.**—The City of Los Angeles (City) obtained millions of dollars worth of construction work that it does not want to pay for. It believes it is absolved of any obligation to pay by Public Contract Code section 7107[1] and *Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228 [115 Cal.Rptr.2d 900, 38 P.3d 1120] (*Amelco*) on the theory that they dictate a method of proving contract damages, a method that the contractor, Dillingham-Ray Wilson (DRW), says is impossible under the circumstances. Below, DRW asserted its own claims and pass-through claims of subcontractors against the City for breach of a public works contract and obtained an award in excess of $36 million for delays, unpaid contract retention, prompt pay penalties, prejudgment interest and attorney fees. But prior to that, the trial court granted in limine motions and excluded $25 million of DRW's claims on the theory that it could not document its actual costs as required by contract, it was not permitted to prove damages with engineering estimates, and it was not entitled to prove damages using a modified total cost theory. In the published portion of this opinion, we conclude that the trial court erred because section 7107 and *Amelco* impact the measure of damages, not the method of proving them, and also because a modified total cost theory is permissible. Further, DRW is entitled to litigate whether it was required to document its actual costs as a condition of payment.

---

[1] All further statutory references are to the Public Contract Code unless otherwise indicated.

By cross-appeal, the City requests reversal of the judgment on the theory that the trial court committed evidentiary and jury instruction error. Also, the City argues that the trial court erred when it granted prompt pay penalties and attorney fees pursuant to section 7107, subdivision (f), and attorney fees pursuant to California's False Claims Act (Gov. Code, § 12650 et seq.). In the unpublished portion of this opinion, we conclude that these arguments lack merit. However, we also conclude that the City raises at least one valid point, which is that the trial court lacked statutory authority to grant continuing prompt pay penalties after judgment was entered.[2]

Because prompt pay penalties cannot continue after judgment is entered, we modify the award in favor of DRW to reflect that interest on the prompt pay penalties shall accrue at 7 percent legal interest postjudgment. As modified, the award in favor of DRW is affirmed. The judgment, however, is reversed and remanded for a trial on DRW's excluded claims.[3]

## FACTS

After competitive bidding, DRW was awarded a public works contract (C-741 contract) by the City to expand the digester capacity at the Hyperion Wastewater Treatment Plant. The City was permitted to retain up to 10 percent of each progress payment (retention) and hold those funds in an interest-bearing escrow account. Additionally, it could deduct liquidated damages for delays from any payments made. During construction, the City issued over 300 change orders containing more than 1,000 changes to the plans and specifications. On rare occasions, the City directed DRW to perform changes on a time and materials basis. In general, the City requested an estimate of the cost of work, told DRW to commence work and agreed the parties would negotiate a lump-sum payment at a later date. Though the parties agreed on the compensation payable for some of the time and materials change orders and lump-sum change orders, not all the change orders were settled. When DRW completed the project, it asked for an equitable adjustment to compensate it for work performed without a price, and for the expenses and losses incurred due to the City's interference and delays. The City refused. In addition, the City assessed liquidated damages against DRW for delays and did not release the retention funds from escrow.

DRW sued the City for breach of contract. The City cross-complained. The City's claim for breach of contract alleged, inter alia, that DRW was liable for

---

[2] Government Code section 12650 et seq.

[3] The pretrial proceedings and trial presented the trial court with difficult legal and logistical issues that were made even more difficult by the inability of trial counsel to adequately define the case and state the law. Given this context, the trial court's effort to resolve these issues was admirable.

liquidated damages. Other claims were asserted against DRW and a subcontractor, CBI Services, Inc. (CBI), for fraud and violation of the False Claims Act in connection with their requests for payment.

Based on *Amelco* and section 7105, subdivision (d)(2),[4] the City filed motions in limine to preclude DRW from presenting a total cost claim to the jury, and from proving its damages with engineering estimates. The trial court precluded a total cost theory of damages on the grounds that DRW's evidence in support of the theory was insufficient, and ruled that a modified total cost theory was not recognized in California. Next, the trial court ruled that general conditions section 38 (GC Section 38) of the C-741 contract required DRW to proceed on a time and materials basis and document actual costs any time the parties did not agree on a lump sum. DRW was precluded from introducing evidence or presenting argument to the jury that it was entitled to recover damages resulting from changes or extra work calculated by any method other than as provided in the C-741 contract. The trial court held a hearing and found that the in limine rulings barred three of DRW's 10 damages claims: (1) claim No. 3 for the difference between the City's estimates and DRW's estimates on lump-sum change orders when the parties did not agree on a price; (2) claim No. 5 for additional payments due from the City because of breaches of the implied warranty of correctness of the plans and for other breaches of contract;[5] and (3) claim No. 6 for the cost of inefficient labor caused by breach of the implied warranty of correctness of the plans.

The case proceeded to trial on DRW's claims for delay damages, wrongfully withheld retention and prompt pay penalties, and on the City's cross-complaint. Following the presentation of evidence, the trial court instructed the jury and tasked it with interpreting the C-741 contract.

The jury rendered a general verdict with special interrogatories. The jury found that the City breached the C-741 contract and caused DRW damages.

---

[4] Section 7105, subdivision (d)(2) provides in part: "Contracts of public agencies, excluding the state, required to be let or awarded on the basis of competitive bids pursuant to any statute may be terminated, amended, or modified only if the termination, amendment, or modification is so provided in the contract or is authorized under provision of law other than this subdivision. The compensation payable, if any, for amendments and modifications shall be determined as provided in the contract. The compensation payable, if any, in the event the contract is so terminated shall be determined as provided in the contract or applicable statutory provision providing for the termination."

[5] If a contractor makes a misinformed bid because a public entity issued incorrect plans and specifications, precedent establishes that the contractor can sue for breach of the implied warranty that the plans and specifications are correct. The contractor may recover "for extra work or expenses necessitated by the conditions being other than as represented. [Citations.]" (*Souza & McCue Constr. Co. v. Superior Court* (1962) 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338] (*Souza*).)

Under section 7107, the jury concluded that the City's assessment of liquidated damages was unreasonable. Next, the jury found that the City was not entitled to an offset for liquidated damages, and that it was not entitled to recover on its False Claims Act claims and fraud allegations. The judgment for DRW awarded $12,369,880 in contract damages; prejudgment interest on the contract damages; $15,035,533 in prompt payment penalties pursuant to section 7107, subdivision (f); and postjudgment prompt pay penalties until the retention funds were paid to DRW. In posttrial motions under the False Claims Act, DRW was awarded $1,634,188.50 in attorney fees and CBI was awarded $1,211,858 in attorney fees. Based on section 7107, subdivision (f), the trial court awarded DRW $3,799,048.74 in attorney fees expended to recover the withheld retention funds.[6]

These timely appeals followed.[7]

## DISCUSSION

### I.

### DRW's Appeal

DRW contends that it is entitled to a reversal of the in limine rulings because the trial court should have submitted the interpretation of GC Section 38(c) to the jury; it is entitled to prove its damages with the best evidence available (which, in this case, is often engineering estimates); and it is entitled to pursue a modified total cost theory of damages. We agree.

A. *Standard of review.*

When all evidence on a particular claim is excluded based on a motion in limine, the ruling is subject to independent review as though the trial court had granted a motion for judgment on the pleadings or, if evidence was offered, a motion for nonsuit. (*Aas v. Superior Court* (2000) 24 Cal.4th 627, 634–635 [101 Cal.Rptr.2d 718, 12 P.3d 1125], superseded by statute on other grounds as stated in *Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1202 [86 Cal.Rptr.3d 196]; *Stein-Brief Group, Inc. v.*

---

[6] Facts pertinent to the excluded claims have not been adjudicated. Our statement of those facts is based on argument and offers of proof and, as a result, does not give rise to collateral estoppel. On remand, the parties must litigate the relevant facts. As long as the proper law is applied, this opinion in no way precludes the trier of fact from deciding factual issues in favor of the City.

[7] We received briefs from DRW, CBI, and the City and, as amicus curiae, the League of California Cities. CBI was not only a cross-defendant below, it was the real party in interest with respect to a portion of the $25 million in claims that are the subject of DRW's appeal.

*Home Indemnity Co.* (1998) 65 Cal.App.4th 364, 369 [76 Cal.Rptr.2d 3] (*Stein-Brief*).) We must disregard adverse conflicting evidence, view the record in the light most favorable to the plaintiff and determine whether the evidence and inferences were sufficient to support a judgment in the plaintiff's favor. (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1327 [96 Cal.Rptr.2d 364].) If any issues were decided during an in limine proceeding without evidence, we will accept as true the evidence referenced in the plaintiff's arguments and offers of proof. (*Stein-Brief, supra,* 65 Cal.App.4th at p. 369 [accepting as true the "best case scenario" the trial court ordered the plaintiff to submit]; *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803] [finding an inference of injury based on references to evidence in the plaintiff's argument on the motions in limine and in a brief opening statement]; Evid. Code, § 354, subd. (a) [the substance, purpose and relevance of excluded evidence can be made known to a trial court by "questions asked, an offer of proof, or by any other means"].)

In instances in which an in limine ruling does not preclude an entire claim but instead limits the evidence that will be offered to prove a claim, we review the ruling for an abuse of discretion. (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294 [62 Cal.Rptr.3d 309].) "[I]f the trial court's in limine ruling was based upon a misinterpretation of applicable law, an abuse of discretion has been shown." (*Ibid.*)

## B. *GC Section 38(c).*

GC Section 38(c)(4) authorized the City's engineer to request a quotation on a proposed change. DRW was required to submit a quotation on a form entitled "Change Order Cost Quotation Form[/]Estimate Summary for Prime Contractor Total Costs." The form, which was only one page, appeared as attachment A to the general conditions of the C-741 contract. A quotation request was not "considered authorization to proceed with the changed work prior to the issuance of a formal Change Order, unless directed otherwise in writing by the [e]ngineer." With respect to GC Section 38(c)(4) change orders for which the City directed DRW to commence work and negotiate a price at a later date, and for which the City never agreed on a price or paid, DRW proposed to prove at least some of its damages at trial with engineering estimates.

The City, however, argued that when the parties did not mutually determine a lump sum at a later date, DRW could only be paid under GC Section 38(c)(3). That subdivision provided: "[I]f the method or amount of payment cannot be agreed upon prior to the beginning of the work, and the [e]ngineer directs in writing that the work be done on a [time and materials] basis,

[DRW] shall provide labor, equipment, and material necessary to complete the work in a satisfactory manner and within a reasonable period of time. For work performed, payment shall be made for the documented actual cost." The City maintained that this subdivision barred the use of engineering estimates, and that DRW was left holding the bag even if documenting actual costs was impossible.

Confusion arises because GC Section 38(c) stated generally that the cost of changed work was supposed to be formulated in accordance with the provisions of GC Section 38(c)(1) through (12). This could mean, as DRW posited below, that GC Section 38(c)(3) and (4) stand alone as self-contained provisions. Or, assuming without deciding for purposes of this appeal, it could mean that (c)(3) applied to every cost formulation whether the City directed work to be done on a time and materials basis or not, i.e., DRW could not get paid under (c)(4) unless it documented its actual costs as required by (c)(3). Other provisions of the C-741 contract do not eliminate the obfuscation. GC Section 38(b)(4) required the City to agree to an equitable adjustment if a change under GC Section 38 caused an increase in DRW's work, but the terms of GC Section 38(b)(4) did not obligate DRW to document its actual costs. Under GC Section 38(c)(13), DRW was obligated to keep records of the cost of changes and the cost of the base scope of the work. It does not indicate the detail with which those costs were to be tracked. Thus, we conclude that GC Section 38 was reasonably susceptible to more than one meaning and required additional interpretive inquiry. (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39–40 [69 Cal.Rptr. 561, 442 P.2d 641].)

■ If a contract is ambiguous, parol evidence is admissible to aid interpretation. (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 920 [74 Cal.Rptr.3d 733].) We may look at, among other things, course of dealings as a practical construction of the terms. And it is permissible to consider the meaning ascribed to language as a matter of custom and practice. (*Franklin v. Marie Antoinette Condominium Owners Assn.* (1993) 19 Cal.App.4th 824, 829 [23 Cal.Rptr.2d 744].)

DRW presented or adverted to evidence that the parties proceeded under GC Section 38(c)(4). The City never directed DRW to keep track of the cost of the work as it was being performed. This was because the resolution of the changes was dependent on engineering estimates. For some of the work performed under GC Section 38(c)(4), the parties negotiated lump-sum payments after the changed work was completed. As for other work, the City did not reject DRW's estimates based on a lack of actual documentation of costs. Rather, the City adopted its own engineering estimates and rejected DRW's estimates as inaccurate. When the City requested an estimate under

GC Section 38(c)(4) and the parties could not agree on a price before the work commenced, DRW often asked to proceed on a time and materials basis. With rare exception, the City refused.

As for custom and practice in the public works industry, DRW submitted evidence that time and materials change orders are usually limited to emergency situations or to changes small in cost and scope. For large or complex work, owners prefer using lump-sum change orders because time and materials change orders require them to pay for the additional engineering cost of keeping track of the work in the field. Lump-sum change orders are often negotiated after the work proceeds so the parties can avoid delays or suspension of the work.

This evidence supports DRW because its interpretation is consistent with the parties' course of dealing as well as custom and practice.

Given the patent ambiguity of GC Section 38 and the extrinsic evidence offered or referenced by DRW in its papers, it was entitled to a trial on contract interpretation. On remand, the trial court must require "the jury to make special findings on the disputed issues and then base . . . interpretation of the contract on those findings" (*Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 892, fn. 4 [222 Cal.Rptr. 455]), or submit interpretation of ambiguous terms to the jury. (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1562 [6 Cal.Rptr.2d 698] [the trial court did not err in submitting interpretation of an ambiguous term to the jury]; *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

C. *Claims Nos. 3, 5 and 6.*

■ According to DRW, GC Section 38 is not a limitation on the method of calculating breach of contract damages, and the law permits it to prove its damages on claims Nos. 3, 5 and 6 with the best evidence available even if that evidence takes the form of engineering estimates. We agree.

■ Because the C-741 contract is a public contract that was awarded pursuant to competitive bidding, DRW may not sue for abandonment and recover the reasonable value of its services. (*Amelco, supra,* 27 Cal.4th at pp. 238–241.) Based on section 7105, subdivision (d)(2), the compensation payable to DRW for amendments and modifications has to be determined as

provided in the C-741 contract.[8] *Amelco* and section 7105 combine to prevent DRW from seeking to recover anything more for changes than it was entitled to receive by contract. This means that the benefit DRW would have received for change orders if the City performed is the measure of damages. (Civ. Code, § 3300 [the measure of contract damages is the amount which will compensate the aggrieved party for all the detriment proximately caused by a breach]; *Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 468 [277 Cal.Rptr. 40] [breach of contract damages "may not exceed the benefit which [the plaintiff] would have received had the promisor performed"].)

■ If, after remand, the trial court or jury interprets the C-741 contract and concludes that GC Section 38 did not require DRW to document actual costs on the change orders issued by the City, and if engineering estimates are the best evidence of damages available, then DRW can offer those estimates to prove its claims. Our holding is in line with the common law of contract damages. (*Record etc. Co. v. Pageman Hold. Corp.* (1955) 132 Cal.App.2d 821, 823–824 [283 P.2d 724] (*Record Machine*) [" 'While the actual amount of damages from the breach of a contract may not be susceptible of exact proof, the law does not permit one whose act has resulted in loss to another to escape liability on that account; the law requires only that the best evidence be adduced of which the nature of the case is capable.['] "].) When it is clear that a party suffered damages, "the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery. [Citations.]" (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 487 [289 P.2d 785] (*California Lettuce Growers*).) Of course, a trier of fact will still have to decide if the burden of proof has been met. (Civ. Code, § 3301 ["No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin"].) ·

If, on the other hand, the trial court or jury concludes that DRW was obligated to document its actual costs on change orders issued by the City, then there is an issue as to whether documenting actual costs was a covenant to perform rather than a condition to payment.[9] And if it was a condition,

---

[8] Section 20162 establishes that if a public contract exceeds $5,000, like the C-741 contract, "it shall be contracted for and let to the lowest responsible bidder after notice." (§ 20162.) Because there is no conflict between the City's charter and section 20162 or section 7105, these statutes apply to the City. (*Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 51 [83 Cal.Rptr.2d 590]; Cal. Const., art. XI, § 5, subd. (a).)

[9] "A *covenant* is a *promise* to render some performance. The practical distinction between a condition and a covenant may be illustrated as follows: (1) If B agrees to render some performance to A, provided a condition happens, and the condition does not happen, A's *duty to perform is excused*, but A *cannot recover damages* from B. (2) On the other hand, if no condition is stated, and B merely makes a promise, his or her breach of covenant will give rise

there is a question as to whether it was excused. If documenting actual costs was not a condition, or if the condition was excused, DRW is entitled to litigate its damages. DRW may use engineering estimates provided it is the best evidence available.

Despite the foregoing, the City argues that DRW cannot possibly have a remedy because section 7105 supersedes *Record Machine* and *California Lettuce Growers* and thereby proscribes DRW from using any method of calculating damages not spelled out in the C-741 contract. This argument fails.

■ We conclude that section 7105 and the common law of this state are not in conflict because section 7105 does not expressly abrogate common law, and the two can be harmonized.[10] "As a general rule, '[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. [Citation.] "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." [Citations.]' [Citation.]" ' [Citation.] Accordingly, '[t]here is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws.' [Citation.]" (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323].) It is easy to read section 7105 in a way that is compatible with *Record Machine* and *California Lettuce Growers.* ■ Section 7105 impacts the measure of damages for public works contracts, but it does not impact the permissible method of proof. In other words, an award of breach of contract damages under *Record Machine* and *California Lettuce Growers* does not represent a contract modification barred by section 7105.

■ This leads us to breach of the implied warranty of correctness. *Souza* permitted a contractor to assert this claim against a public entity. (*Souza, supra,* 57 Cal.2d at pp. 510–511.) Because we are bound by *Souza,* and so is the trial court, DRW must be permitted to pursue its implied warranty of correctness claims to the extent they are not subsumed within a change order. If DRW recovers, the award will not represent a contract abandonment barred by *Amelco,* nor will it represent a payment for an amendment barred by section 7107, subdivision (f). Rather, it will simply represent an award of contract damages under long-standing common law.

to a right of action for damages, but will not necessarily excuse A's performance." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 778, pp. 867–868, original italics.)

[10] At oral argument, the City conceded that section 7105 did not abrogate common law.

D. *The modified total cost method of proving damages.*

Our last inquiry is whether DRW should have been permitted to present a modified total cost claim to the jury.

 Under the total cost method, "damages are determined by 'subtracting the contract amount from the total cost of performance.' [Citations.]" (*Amelco, supra,* 27 Cal.4th at p. 243.) This method may be used only after the trial court determines the following can be shown: (1) it is impractical for the contractor to prove actual losses directly; (2) the contractor's bid was reasonable; (3) its actual costs were reasonable; and (4) it was not responsible for the added costs. (*Id.* at pp. 243–244.) If some of the contractor's costs were unreasonable or caused by its own errors or omissions, then those costs are subtracted from the damages to arrive at a modified total cost. (*Servidone Const. Corp. v. U.S.* (Fed.Cir. 1991) 931 F.2d 860, 862.) "If prima facie evidence under this test is established, the trier of fact then applies the same test to determine the amount of total cost or modified total cost damages to which the plaintiff is entitled." (*Amelco, supra,* 27 Cal.4th at p. 244.)

 *Amelco* recognizes that a contractor can recover on a total cost or modified total cost theory. In doing so, the court cited *State of California ex rel. Dept. of Transportation v. Guy F. Atkinson Co.* (1986) 187 Cal.App.3d 25, 32 [231 Cal.Rptr. 382] (*Guy F.*). The court in *Guy F.* approved an arbitrator's use of a total cost theory of calculating damages against a public entity. *Amelco* did not decide whether a public contractor could assert a total cost or modified total cost theory. But also, *Amelco* did not disapprove of *Guy F.* Thus, the common law permits a public contractor to pursue either a total cost theory or modified total cost theory. Section 7105 does not expressly abrogate common law, and the statute and common law can be harmonized because the total cost and modified total cost theories are merely methods of proving damages. The trial court abused its discretion by not following the common law recognized in *Amelco* and by declining to decide whether DRW demonstrated a prima facie case for determining damages based on a modified total cost theory. On remand, DRW may pursue a modified total cost theory of proving damages if DRW is not required to document its actual costs. If the trial court finds a prima facie case, then DRW shall be entitled to present a modified total cost theory to the jury.

All other issues are moot.[11]

---

[11] CBI contends that it is entitled to recover on its pass-through claims even if we affirm the trial court's in limine rulings. According to CBI, its claims are viable because they are not lump-sum claims, its owner interference claim is not governed by the change order provisions,

## II.

## The City's Cross-appeal[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The award is modified to reflect that DRW is entitled to 7 percent interest on the prompt pay penalties. As modified, the award in favor of DRW is affirmed. The judgment is otherwise reversed and remanded for further proceedings on DRW's excluded contract claims.

DRW and CBI shall recover their costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.

A petition for a rehearing was denied April 16, 2010, and the opinion was modified to read as printed above. The petition of respondent City of Los Angeles for review by the Supreme Court was denied June 30, 2010, S182187.

---

and it offered evidence of its actual costs. Because we have concluded that the in limine rulings were improper, CBI's pass-through claims can be tried. We need not reach CBI's specific arguments.

[*]See footnote, *ante*, page 1396.