[Civ. No. 9913.   Third Dist.   June 30, 1960.]

AUTOMATIC VENDING COMPANY (a Corporation), Respondent, v. BESSIE JANE WISDOM, Appellant.

Clifford R. Lewis for Appellant.

Devlin, Diepenbrock & Wulff for Respondent.

WARNE, J. pro tem.*—Defendant appeals from a judgment for plaintiff in an action for damages for breach of contract.

Respondent is engaged in the business of selling and dispensing cigarettes by means of automatic vending machines. Defendant leases and operates a cafe. On February 27, 1958, respondent and appellant entered into a written contract whereby appellant granted to respondent a three-year concession for the sale of cigarettes on her premises by means of cigarette vending machines. The provisions of the contract insofar as they are pertinent to the issues presented on this appeal are as follows:

"1) In consideration of the payment of any advance com-

---

*Assigned by Chairman of Judicial Council.

mission hereunder, or the payment of the commissions hereinafter set forth, I/we hereby grant to you, AUTOMATIC VENDING COMPANY, a corporation, for a period of three (3) years from the date shown hereon, an exclusive concession for the sale of cigarettes in and about my/our place of business located at 2816 W. Capitol Av. West Sacramento, California, known as Bessie Jane Wisdom, DBA LAST CHANCE CAFE.

. . . . . . . . . . . .

"6) You are to pay me/us the following rates of commission for the said exclusive concessions:

"On Monthly sales 1000 packages or over...8% on all sales
"On Monthly sales 700 to 1000 packages...7%
"On Monthly sales 400 to 700 packages...5%
"On Monthly sales 100 to 400 packages...4%

"7) I/we agree that you may change the above cigarette commission rates upon written notice to me/us and I/we further agree to accept your count as to the amount of cigarettes sold on my/our premises.

"8) No commissions shall be paid hereunder by you to me/us until all of the advance commissions, if any, heretofore paid by you have been repaid to you in full, and thereafter said commission shall be paid to me/us monthly. I/we shall not assign this contract or any part thereof, without your written consent, during the term hereof."

Concurrently with the execution of this agreement respondent paid appellant $200 as an advance commission. In January of 1959, appellant demanded that respondent pay to her larger commissions than those provided for in the contract, which respondent refused to do. On January 28, 1959, appellant repudiated the contract and demanded that respondent remove its cigarette vending machine from her premises. Respondent did so and on March 8, 1959, filed this suit to recover damages for loss of profits which it would have earned during the remaining 25 months' life of the contract.

The undisputed testimony of one John Wojcik, vice president of the respondent corporation, shows that the total sales from the cigarette vending machine on appellant's premises during the 12 months immediately prior to appellant's breach of the contract averaged 1,389 packs monthly; that its average gross profit per package of cigarettes was $.076567; that its net profit is determined by deducting from its gross profit a commission paid to appellant of $.02 per package of cigarettes sold and sales tax paid in the amount of $.01 per package sold which resulted in a net profit to appellant of $.04657

per package of cigarettes sold. In arriving at his estimate of respondent's loss by reason of appellant's breach, the witness multiplied the number of packages sold each month by the average profit per pack, and then multiplied this figure by the number of months (25) which the contract had to run at the time of breach, which totaled $1,617 (the amount of damages found by the trial court). The witness testified, however, that he had not subtracted from the computed profits any amount representing the respondent's cost of doing business, because respondent's costs were fixed and would not be diminished by reason of the loss of appellant's account; that even if as many as 20 accounts were lost respondent's cost of doing business would not be affected; and that no special trip had to be made to service appellant's account because it is located on a route taken by one of respondent's men every day.

Appellant first contends that the contract is illusory, lacks mutuality of obligation, and is void since in effect it gave respondent the discretionary power to vary the commissions which defendant would receive. We feel that this contention is without merit.

The general rule is that: "An agreement that provides that the price to be paid, or other performance to be rendered, shall be left to the will and discretion of one of the parties is not enforceable. This is because the party having such discretion makes no real promise to pay or to perform. An illusory promise is no promise at all and is not a sufficient consideration for a return promise. But the fact that one of the parties reserves the power of varying the price or other performance is not fatal if the exercise of this power is subject to prescribed or implied limitations, as that the variation must be in proportion to some objectively determined base or must be reasonable." (1 Corbin on Contracts, § 98, p. 311.) But, as stated in *California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496] : " 'When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, *or when it leaves the amount thereof to the discretion of an interested party*, the consideration must be so much money as the object of the contract is reasonably worth.' Professor Williston says 'Even an agreement that the price shall be fixed by an interested party is valid if his interest is known and there is no bad faith.' (1 Williston on Sales (rev. ed.) §§ 167, pp. 434-435; see Civ. Code, §§ 1729, 1655, 1656.) (Emphasis added.)

". . . [W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. (Civ. Code, §§ 1655, 1656; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 771 [128 P.2d 665]; *Brogdex Co.* v. *Walcott*, 123 Cal.App.2d 575 [267 P.2d 28]; *Brawley* v. *Crosby etc. Foundation, Inc.*, 73 Cal.App.2d 103 [166 P.2d 392].)" We feel that the principles of law as above stated are applicable to the construction of the contract in question.     Such being the applicable law, the power given to the Automatic Vending Company to change the commission rates upon written notice would impose a duty upon it to exercise that discretion in good faith and in accordance with fair dealings and fix the commissions in such amount as the object of the contract is reasonably worth. Therefore, it cannot be said that the contract in question is illusory, lacks mutuality of obligation, or is void.

Appellant also contends that the court erred in accepting the method of computation of damages as offered by respondent, because that method did not deduct a proportionate amount of the respondent's costs of doing business. As hereinabove noted, the testimony shows that the respondent's costs of doing business were fixed and would not diminish because of the loss of the right to place one of its cigarette vending machines in appellant's cafe.     While the general rule is that one will not be permitted to recover gross profits, in the event of a breach of the contract, nevertheless under certain circumstances as where, for example, ". . . plaintiff's expenses of operating his business are fixed and would have continued in an equal amount even if the contract had not been breached by the defendant, an award of gross profits may be allowed to the plaintiff, since, in such a situation, the gross profits involved would also constitute the net profits which the plaintiff would have earned under the agreement." (14 Cal.Jur.2d, Damages, § 134; see also *Phalanx Air Freight, Inc.* v. *National etc. Freight Corp.*, 104 Cal.App.2d 771, 775 [232 P.2d 510]; *Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472, 482-483 [230 P.2d 36].)

By awarding respondent damages based on gross profits, less one cent sales tax per pack and the amount of commission appellant would have received under the provisions of paragraph six of the contract, the court impliedly found that plaintiff's expenses, including servicing, repairing and buying equipment would not have been greater had the contract not

been breached. (*Walpole* v. *Prefab Mfg. Co., supra.*) The evidence fully supports such implied finding. We find no merit in appellant's contention.

For the reasons stated we have concluded that the judgment must be affirmed.

■ Respondent requests that it be allowed to move the trial court for an order fixing reasonable attorneys' fees for services on appeal and that the amount of the attorneys' fees so found be included in the judgment conditional upon an affirmance. In the event of a breach thereof the contract in question provides for reasonable attorneys' fees expended in enforcing it. The trial court fixed the sum of $400 as reasonable attorneys' fees for services rendered in that court.

■ " 'A contract for a reasonable attorney's fee in enforcing its provisions embraces an allowance for legal services rendered upon appeal as well as during the trial.' " (*Dankert* v. *Lamb Finance Co.*, 146 Cal.App.2d 499, 503-504 [304 P.2d 199].) ■ Accordingly, respondent is entitled to attorneys' fees on this appeal, and since it appears to us that $250 is a reasonable sum to be allowed for that purpose, there is no necessity for referring the matter to the trial court.

The judgment is affirmed, and appellant is ordered to pay to respondent additional attorneys' fees on this appeal in the sum of $250.

Van Dyke, P. J., and Schottky, J., concurred.