[Civ. No. 14839. Third Dist. June 25, 1976.]

ROBERT C. POWELL et al., Plaintiffs and Appellants, v.
CENTRAL CALIFORNIA FEDERAL SAVINGS AND
LOAN ASSOCIATION, Defendant and Respondent.

542

## COUNSEL

Malcolm L. McConnell for Plaintiffs and Appellants.

Miller, Starr & Regalia, Burch Fitzpatrick and M. Janice Smith as Amici Curiae on behalf of Plaintiffs and Appellants.

Angell, Adams & Holmes, Philip H. Angell, Jr., and Barry D. Hovis for Defendant and Respondent.

## OPINION

**PARAS, J.**—After trial by the court, plaintiffs appeal from a judgment that they take nothing from defendant in their action for damages and declaratory and injunctive relief.

Defendant is a federal savings and loan association chartered by the Federal Home Bank Board ("board") and is subject to the board's regulations. (12 U.S.C. §§. 1462, 1464; see generally, *Woodard* v. *Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218 [244 P.2d 467].) On June 26, 1963, Beatrice L. Powell, the mother of plaintiff Robert C. Powell, executed an $850,000 promissory note payable to defendant and secured by a deed of trust. The note and deed of trust were given for a loan obtained by Beatrice, with her son's prior knowledge, to finance an apartment house which he was building. The note provided for interest at 7 percent per annum, with principal and interest payable in 240 monthly installments of not less than $6,591 commencing October 1, 1964. The note further stated that "[i]n any event, the whole of said principal and interest shall be paid on or before September 1, 1984," and it contained the following variable interest provision:

"On or after one year from date, on three months written notice to the obligor, the holder [defendant] may increase or decrease the above interest rate by a maximum of 1% per annum in any calendar year, after

an increase or decrease in the dividend rate paid by Central California FEDERAL SAVINGS and Loan Association [defendant] to the holders of its savings accounts over or under the now existing rate, provided within said three months period the obligor may pay in full the balance due with interest at the original rate specified above and without any prepayment penalty."

On May 28, 1964, plaintiffs (husband and wife) assumed the indebtedness evidenced by the aforesaid note and agreed to pay it as in the note provided.

On August 20, 1964, plaintiffs borrowed another $50,000 from defendant and executed a promissory note therefor, secured by the same earlier trust deed. The $50,000 note provided for interest at 7 percent per annum, with principal and interest payable in 240 monthly installments of not less than $388 commencing October 1, 1964. Like the $850,000 note, the $50,000 note provided that all principal and interest be paid on or before September 1, 1984, and it contained the same variable interest provision.

On September 13, 1967, plaintiffs borrowed yet another $600,000 from defendant and executed a third promissory note therefor, secured by a separate deed of trust on other property. This note provided for interest at 7½ percent per annum, with principal and interest payable in 300 monthly installments of $4,434 commencing August 1, 1968. It stated that "[i]n any event, the whole of said principal and interest shall be paid on or before July 1, 1993," and it contained the following variable interest provision:

"On or after one year from date, on three months written notice to the obligor, the holder [defendant] may increase or decrease the above interest rate by a maximum of 1% per annum in any calendar year, after an increase or decrease in the earning rate paid by the holder [defendant] to the holders of its savings accounts over or under its now existing rate, provided within said three months period the obligor may pay in full the balance due with interest at the original rate specified above and without any prepayment penalty."

Each of the notes was drafted by defendant. The trial court found that it was of no substantive importance that there were minor differences in language in the two forms of variable interest provisions; in particular, it

found that "dividend rate" (the phrase used in 1963 and 1964) and "earning rate" (the phrase used in 1967) were intended to mean "the cost of savings" to defendant, i.e., the interest paid by it to depositors. On appeal, this finding is not attacked.

On or about May 13, 1970, defendant notified plaintiffs by letter that (1) effective September 1, 1970, the interest rate on the 1963 and 1964 loans (totaling the face amount of $900,000) would be increased from 7 percent to 8 percent and the total monthly payment on the two loans would be increased to $7,650; and (2) likewise effective September 1, 1970, the interest rate on the 1967 loan ($600,000) would be increased from 7½ percent to 8½ percent and the monthly payment thereon would be increased to $4,806. Defendant's letters stated that it was necessary to resort to the variable interest provisions of the promissory notes because defendant was required to pay higher interest rates to its savings depositors.

Plaintiffs, through their attorney, thereupon advised defendant that the interest increase was invalid and that the notes called for specific monthly payments which could not be increased by defendant without plaintiffs' consent. On August 26, 1970, defendant wrote plaintiffs that the interest rates would be increased as previously indicated, but that it would not be necessary for plaintiffs to increase their monthly payments if they did not wish to do so. The obvious consequence of increases in the interest rate without concurrent increases in the monthly payments was that in the future there would be required either (1) increased or "balloon" payments at the end of the designated terms of the notes or (2) an extension of the designated maturity dates. Plaintiffs elected not to increase monthly payments.

On the dates the notes were executed, defendant offered the following types of savings accounts:

| Date of Note | Amount of Note | Types of Accounts Offered by Defendant |
|---|---|---|
| 6/26/63 | $850,000 | Savings Passbook |
| 8/20/64 | $ 50,000 | Savings Passbook |
| 9/13/67 | $600,000 | Savings Passbook<br>½% Bonus Account<br>¼% Bonus Account |

On September 1, 1970, when defendant invoked the variable interest provisions, it offered six different types of savings accounts, namely:

Savings Passbook
½% Bonus Account
¼% Bonus Account
5.5% Notice Passbook
5.75% fixed rate fixed term certificate
Fixed rate fixed term certificates for deposits
of $5,000 through $100,000 minimum deposits.

The interest rates paid by defendant to depositors on the dates relevant to this case were as follows:

| Date | Event | Interest Paid on Savings Passbook Accounts only | Weighted Average of Interest Paid on All Types of Accounts |
|---|---|---|---|
| 6/28/63 | $850,000 Note Executed | 4.75% | · 4.82% |
| 8/20/64 | $50,000 Note Executed | 4.85% | 4.74% |
| 9/13/67 | $600,000 Note Executed | 5% | 5.06% |
| 9/1/70 | 1% Interest increase invoked | 5% | 5.26%[1] |

The increases in the interest rates which defendant paid depositors between the dates the notes were executed and September 1, 1970, were as follows:

| | Interest Rate Increase on Savings Passbook Accounts Only | Interest Rate Increase on Weighted Average for All Types of Accounts |
|---|---|---|
| $850,000 Note | .25% | .44% |
| $ 50,000 Note | .15% | .52% |
| $600,000 Note | 0% | .26% · |

---

[1]Defendant contends that, according to the evidence, this last figure should be 5.42 percent instead of 5.26 percent. Plaintiffs rely upon the 5.26 percent figure. The difference does not affect our conclusions.

Plaintiffs commenced this action on September 17, 1970, approximately two weeks after the date set by defendant for the variable interest increases to become effective. At trial on October 31, 1972, at the conclusion of plaintiffs' case, they filed a first amended complaint to conform to proof. In relevant part, plaintiffs' amended pleading alleged that the variable interest provisions were unenforceable because they were ambiguous, constituted contracts of adhesion, and, as utilized by defendant, would result in balloon payments at the end of the loan terms in violation of the board's regulations.

On or about December 11, 1972, while the cause was under submission, plaintiffs obtained from another lender a new loan on the real properties which were encumbered by the three trust deeds. Defendant made escrow demands for payment of the principal and interest claimed to be due on its three loans, including the variable interest increases. The demands were paid. Plaintiffs brought these events to the trial court's attention by a declaration of their attorney in support of a motion to reopen filed on January 26, 1973. After hearing thereon, the court granted the motion and gave defendant an opportunity to dispute the computations set forth in the declaration of plaintiffs' attorney; no dispute was made.

The declaration of plaintiffs' attorney alleged damages of $21,099.71 resulting from the 1 percent interest increase on the 1963 and 1964 loans, and $15,680.25 resulting from the 1 percent interest increase on the 1967 loan. The court found that if the variable interest increase of 1 percent had not been invoked, plaintiffs would have been required to pay defendant "$21,099.71 less than the amount they were required to pay defendant" on the 1963 and 1964 loans, and "$15,680.25 less than the amount they were required to pay defendant" on the 1967 loan.

I

At all times material to this action, the term "installment loan" was defined in 12 Code of Federal Regulations section 541.14 (23 Fed. Reg. 9890) as follows: "The term 'installment loan' means any loan repayable in regular periodic payments, equal or unequal, sufficient to retire the debt, interest and principal, within the contract period: *Provided, however,* That the loan contract shall not require any subsequent periodic

principal payment to be greater than any previous periodic principal payment." (Italics in original.)[2]

The above regulation was duly promulgated by the board (23 Fed. Reg. 9890) and had the force and effect·of law. (*Broad Fed. etc. Loan Assoc.* v. *Howard* (1955) 133 Cal.App.2d 382, 386, fn. 4 [285 P.2d 61]; *Woodard* v. *Broadway Fed. S. & L. Assn., supra,* 111 Cal.App.2d at pp. 222-223.) It was binding not only upon plaintiffs and defendant[3] (*ibid*) but also upon the board. (*Service* v. *Dulles* (1957) 354 U.S. 363, 372 [1 L.Ed.2d 1403, 1410, 77 S.Ct. 1152].)

In its conclusions of law, the trial court held that "[f]ederal regulations" did not preclude defendant either from increasing the interest rates on the three promissory notes or from increasing the monthly interest payments thereon. Plaintiffs, on the other hand, contend that the variable interest increases conflicted with 12 Code of Federal Regulations section 541.14 and with the terms of the notes, because under the regulation (1) the maturity dates of the notes could not be extended and (2) the monthly payments could not be increased.

■■■■■ It is correct that the maturity dates could not be extended in order to satisfy defendant's invocation of the variable interest provisions. This follows from the fact that each note specified a definite maturity date by which the whole of principal and interest was to be paid "in any event;" and 12 Code of Federal Regulations section 541.14 required that each of defendant's installment loans to plaintiffs be repayable "within the contract period. . . ."[4]

---

[2]Effective April 10, 1972, 12 Code of Federal Regulations section 541.14 was amended as follows: "The term 'installment loan' means any loan repayable in regular periodic payments sufficient to retire the debt, interest and principal, within the loan term. However, no required payment after the first payment shall be more, but may be less, than any preceding payment." (37 Fed. Reg. 5118.)

[3]Under defendant's charter, as the trial court found, plaintiffs were borrower members as well as depositor members of defendant.

[4]Defendant cites dictum in a New York trial court opinion (*Washington Hts. F.S. & L. Ass'n* v. *Brooklyn F. S. Corp.* (1957) 5 Misc.2d 997 [161 N.Y.S.2d 674]) in support of its argument that plaintiffs, having received the benefit of the loans, cannot contend that the variable interest provisions were (as defendant puts it) "ultra vires" under 12 Code of Federal Regulations section 541.14. Any violation of the regulation, however, reflects illegal conduct rather than ultra vires activity (6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, §§ 107-109, pp. 4401-4402); and, under California law, plaintiffs are not estopped to assert it (1 Witkin, *op. cit. supra,* Contracts, § 353, p. 298).

Nonetheless, defendant could properly have required that the monthly payments be increased to meet the variable interest increase of 1 percent. 12 Code of Federal Regulations section 541.14 expressly contemplated "unequal" periodic payments and, in this regard, it only prohibited "any subsequent periodic *principal* payment" from being made greater than "any previous periodic *principal* payment." (Italics added.) A raise in the monthly payments to accommodate the higher interest rate did not do this, as only the interest portion of the monthly payments was increased. There was thus no violation of 12 Code of Federal Regulations section 541.14.

## II

In *Automatic Vending Co.* v. *Wisdom* (1960) 182 Cal.App.2d 354, at page 357 [6 Cal.Rptr. 31], the court quoted 1 Corbin on Contracts, section 98, page 311, as follows: " 'An agreement that provides that the price to be paid, or other performance to be rendered, shall be left to the will and discretion of one of the parties is not enforceable. This is because the party having such discretion makes no real promise to pay or to perform. An illusory promise is no promise at all and is not a sufficient consideration for a return promise. But the fact that one of the parties reserves the power of varying the price or other performance is not fatal if the exercise of this power is subject to prescribed or implied limitations, as that the variation must be in proportion to some objectively determined base or must be reasonable.' "

Plaintiffs contend that, under the foregoing doctrine, the variable interest provisions were illusory. We reject the contention. While the variable interest provisions of the notes are ambiguous in several respects, under the doctrine of *Automatic Vending Co.* v. *Wisdom, supra,* 182 Cal.App.2d at page 357, a contracting party's discretionary power to vary the price or other performance does not render the agreement illusory if the party's *actual* exercise of that power is reasonable. (*Id.,* at pp. 357-358.)

In the instant case, the trial court made an express determination (stated as a conclusion of law) that the 1 percent increase invoked by defendant was reasonable. Regardless of whether the question of reasonableness is one of law or fact, and regardless of whether the relevant interest increases paid by defendant to holders of its "savings" accounts were those applicable to all types of accounts or should have been limited to savings passbook accounts (and, perhaps, to the two

bonus accounts offered in 1967), we are of the opinion that the trial court's ruling was correct. We do not find a 1 percent variable interest increase unreasonable when compared with depositor's interest increases of, respectively, .25 percent and .15 percent (for savings passbook accounts only) or .44 percent, .52 percent, and .26 percent (weighted average for all types of accounts). To the extent of allowing a single increase in this amount, there was no ambiguity, and the variable interest provisions were not illusory.

### III

The trial court determined, as a conclusion of law, that the promissory notes executed (or, inferentially assumed) by plaintiffs were not contracts of adhesion. Plaintiffs contend that this determination was erroneous. The contention is without merit.

The term "contract of adhesion" refers to "a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and *under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement.*" (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284].) (Italics added.)

In *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d at page 883, the court cited with approval *Henningsen* v. *Bloomfield Motors, Inc.* (1960) 32 N.J. 358 [161 A.2d 69, 75 A.L.R.2d 1]. Both cases rely upon the following quotation from Kessler, *Contracts of Adhesion—Some Thoughts about Freedom of Contract* (1943) 43 Colum.L.Rev. 629 at page 632: " 'Standard contracts are typically used by enterprises with strong bargaining power. The weaker party, in need of the goods or services, is frequently *not in a position to shop around for better terms,* either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party, terms whose consequences are often understood only in a vague way, if at all.' " (Italics added.) (58 Cal.2d at p. 882, fn. 11; 32 N.J. at pp. 389-391 [161 A.2d at pp. 86-87].)

In the instant case, the court found that at the time each of the three promissory notes was executed, defendant was the only federal

savings and loan association having a branch in Davis, California, where the properties secured by the three loans were located. However, upon substantial evidence, the court also found that defendant was not the only source of loans available to plaintiffs; that other sources of funds were available to them; that both plaintiffs "were sophisticated borrowers in the field of real estate development;" and that, in particular, plaintiff Robert C. Powell was, at the time of the assumption of his mother's loan and the making of the second loan, "a knowledgeable and apparently successful developer of real estate with sophistication in the area of financing large-scale developments."

There was no evidence or finding that defendant's competitors all used the same (or, indeed, any) variable interest provisions in making loans. The evidence was undisputed that, although the same variable interest provisions were invoked against other borrowers of defendant in 1966, plaintiffs negotiated with defendant at that time and obtained an exemption from the 1966 interest increase because they were defendant's largest depositors and borrowers.

Missing from this case therefore are the monopoly of supply or the industry-wide usage of similar contract terms and the disparity in bargaining power, both of which characterize contracts of adhesion. None of the cases relied upon by plaintiffs[5] involve facts comparable to the findings relevant to adhesion which were made in this case.

Moreover, the issue of adhesion is not really involved. ■ There is nothing sinful or illegal about a contract of adhesion; the only significant result of the existence of such a contract is that it is interpreted against the supplier of the goods or services (who prepared it) so as to meet the reasonable expectations of the customer. (*Steven* v. *Fidelity & Casualty Co., supra.*) We have here held that to the limited extent necessary to sustain a single increase in the interest rate, the notes are not ambiguous and there is no need for interpretation. Accordingly, the classification of the notes as contracts of adhesion, if such were otherwise appropriate, has no significance in this lawsuit.

The judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 18, 1976. Richardson, J., did not participate therein.

---

[5]*Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11 [92 Cal.Rptr. 704, 480 P.2d 320]; *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Lomanto* v. *Bank of America* (1972) 22 Cal.App.3d 663 [99 Cal.Rptr. 442].