[Civ. No. 15363. Third Dist. Mar. 10, 1977 ]

VANGUARD INVESTMENTS, Plaintiff and Appellant, v. CENTRAL CALIFORNIA FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant and Appellant.

### COUNSEL

Miller, Starr & Regalia, Burch Fitzpatrick and M. Janice Smith for Plaintiff and Appellant.

Angell, Adams & Holmes, Philip H. Angell, Jr., Barry D. Hovis, Purtell & Hoppin and Thomas A. Purtell for Defendant and Appellant.

### OPINION

**REGAN, J.**—Plaintiff Vanguard Investments, a California limited partnership, filed suit on its own behalf and on behalf of all persons similarly situated against the defendant Central California Federal Savings and Loan Association for declaratory relief and damages arising out of the defendant's use of variable interest rate mortgages. After the introduction of documentary evidence, the plaintiff moved for a partial summary judgment. Thereafter, defendant filed its cross-motion for summary judgment. The trial court granted parts of both motions and entered judgment.

On March 22, 1965, plaintiff entered into an assumption agreement with defendant and its borrower whereby plaintiff assumed an indebtedness evidenced by a promissory note in the face amount of $400,000. This note contained a variable interest rate clause which provided:

"On or after one year from date, on three months' written notice to the obligor, the holder [defendant] may increase or decrease the above interest rate by a maximum of 1% per annum in any calendar year, after an increase or decrease in the dividend rate paid by Central California FEDERAL SAVINGS and Loan Association [defendant] to the holders of its savings accounts over or under the now existing rate, provided within said three months period the obligor may pay in full the balance due with interest at the original rate specified above and without any prepayment penalty."[1]

Pursuant to this provision, defendant notified plaintiff on June 30, 1966, that the interest rate on the note was being increased from 6½ percent to 7 percent, effective November 1, 1966, and that plaintiff's monthly interest charge would be increased accordingly.[2] Plaintiff made no objection to the increased monthly interest charge and has continuously paid the increased monthly installments due on the promissory note since November 1, 1966. Each of the various class members in this action who were borrowers at the time was given notice of a similar increase at or about the same time.[3]

On May 11, 1970, defendant notified plaintiff that pursuant to the variable interest provision the interest rate would be increased from 7 to 8 percent beginning September 1, 1970, and the plaintiff's monthly interest charge would be increased accordingly.[4] Plaintiff made no objection to this increase. Each of the various class members was given similar notice.

On April 15, 1971, plaintiff requested an explanation from defendant of the increase in interest rates on its loan. Plaintiff requested that it be

[1]Sometime in 1965 the language of the variable interest provision was altered so that the words "earnings rate" were substituted for the words "dividend rate." The change in language was not intended to modify the meaning or operation of the clause.

[2]The notification of the increase contained this statement: "Your note to us includes a provision to provide for an adjustment of the rate you pay according to changes which may be required for payment of higher or lower rates to holders of our savings accounts. This provision is an adjustment to compensate for inflationary or deflationary changes which sometimes develop in national economic conditions." (The variable rate provision allows lending institutions to maintain at all times full statement value of their mortgage loans, provides security and stability under uncertain economic conditions, and improves cash flow during periods of tight money.)

[3]Over the defendant's objection, the trial court certified this case as a "class action" pursuant to motion of the plaintiff.

[4]The defendant included the following statement in its 1970 notice of interest increase: "The note on your loan with us includes a provision in it to provide for adjustment of the rate of interest you pay, up or down, as may be necessary according to changes in rates

furnished with the factual data supporting the validity of the increase. In its letter the plaintiff noted that the rate of interest on its note had been increased by defendant from 6½ percent to 8 percent. The letter then states: "What the [variable interest] clause implies is that the rate you now pay on savings has gone up 1½%."

Defendant replied to this letter by advising plaintiff that the interest increases were based upon increases in rates paid to its savings members and that the defendant had found it necessary to raise the interest rates of its borrowers in order to reestablish a reasonable relationship between the cost of money to the defendant and the price charged by it for loans.[5]

It appears to be undisputed that during the time periods in question the earning or dividend rate paid on all savings accounts had been increased by defendant over that in effect at the time of the loan to plaintiff. These figures reflect that at the time of the execution of the loan in question during the first quarter of 1964 the rate was 4.73 percent. In the third quarter of 1966, when the variable interest provision was first invoked, the rate had increased to 5.19 percent, and in the third quarter of 1970, when the variable interest provision was again invoked, the rate had increased to 5.42 percent. From 1964 to 1966 the basic passbook rate increased from 4.85 percent to 5.25 percent. The increase in the dividend or earning rate in 1970 apparently resulted from savings being placed in higher earning certificate accounts and not from an increase in the basic passbook rate.

On August 19, 1971, plaintiff filed a complaint seeking "a declaration that the interest increases exacted by defendant were and are excessive and for a declaration that the promissory note authorizes an interest increase only by the amount of increase in the dividend rate paid by defendant on its basic passbook saving accounts . . . " On November 13, 1972, plaintiff amended its complaint by filing a class action wherein

we are required to pay to savings depositors for the funds they invest to provide for the mortgage lending capital of this savings and loan association."

In defendant's answers to certain interrogatories posed, the following appears: "Exactly how were the interest rate increases of November 1, 1966 and September 1, 1970 computed?

"ANSWER: By determination of the Board of Directors based upon the Board's knowledge of increased interest costs and the Board's analysis of interest cost trends. No mathematical formula was employed."

[5]The decision to raise the interest rates was reached because defendant "could not accept the narrowing gap between the cost of money and the price we charge." Simply put, the interest rate charged by defendant was tied to the deposit rate it paid its customers.

plaintiff brought suit on behalf of itself and all of defendant's borrowers whose interest rates were increased by defendant in 1966 and 1970.

The pretrial order of September 17, 1974, described the nature of the case: "This is a class action brought by plaintiff to recover all or part of the additional interest paid to the defendant by the class members as a result of the defendant's increase of the interest rates on its loans under a variable interest rate clause. The plaintiff is seeking for itself and each class member a declaratory judgment that the interest rate increases were illegal or excessive, damages for the excess interest paid, and punitive damages for fraudulent misrepresentation."

On November 25, 1974, plaintiff made a motion for a partial summary judgment on the ground that defendant acted wrongfully in increasing the interest rate on its loan because: (1) the variable interest rate clauses in the loans were illegal; (2) the increase of interest in 1966 exceeded the allowable rate under the notes; and (3) the 1970 increases were not authorized by language in the notes.

On December 10, 1974, defendant made a cross-motion for summary judgment on the grounds that (1) the variable interest rate clauses were legal; and (2) the increases were within the terms of the promissory notes as signed.

On January 24, 1975, the trial court rendered its opinion and decision holding that the variable interest provision was legal and enforceable and did not require the interest increase to equal the increase in the dividend or earnings rate paid on savings by defendant. After deciding in favor of the defendant on these points, however, the court found for the plaintiff with regard to the validity of the 1970 increase and held it to be void as not coming within the terms of the agreement.

Following this decision, the defendant moved the court to reconsider its determination on summary judgment because the issue found adversely to defendant was based either on factual conclusions wholly unsupported by the record and contrary to the undisputed testimony of the defendant regarding the meaning of the variable interest provision or on a disputed fact which could not support a decision for summary judgment. In particular the defendant asked for reconsideration of that part of the court's decision which held that the variable interest provision refers only to the types of savings accounts existing at the time of execution of the promissory note of plaintiff. In addition, the defendant

asked the court to clarify the class aspects of its decision in that the opinion was silent regarding its application to the class of plaintiffs and failed to consider differences in the positions of various class members.

The trial court granted the defendant's motion and on April 4, 1975, issued its reconsidered and corrected opinion on decision. This opinion is substantially identical to the original decision of the court.[6] The language of the trial court with regard to the plaintiff's understanding of the meaning of the variable interest provision was redrafted to read as follows: "At the time these promissory notes were executed defendant had at least two types of savings plans for its customers: a regular passbook savings account, and a 'full-paid certificate account.' The interest to be paid on these accounts was at the relevant time the same, and was determined by the defendant. Neither party has come forward with an explanation or description of what a 'full-paid certificate' savings plan is or was. The only reasonable inference that can be drawn is that under the language of the agreement plaintiff believed that the variability of the interest he was to pay on his loan would be based on the dividend rate paid by defendant on the type of accounts *then existing*, and not on various types of accounts and plans to be instituted in the future. In other words, the interest paid by plaintiff could vary up or down in relation to the upward or downward variance of the interest defendant paid out on its savings accounts. Defendant's contention that the variance of plaintiff's interest should be based on the present day total of some twelve types of savings plans is not in accord with the terms of the contract."[7]

On April 4, 1975, the trial court entered its order for summary judgment. The defendant's cross-motion for summary judgment was granted in the following particulars:

"1. The variable interest rate clause contained in the defendant's promissory notes was not illegal when the notes were executed.

"2. Under the variable interest rate clause in the defendant's promissory notes, if the defendant can show an increase or decrease in the dividend rate paid, it can increase or decrease the interest rates on its

---

[6]This latter opinion is silent with regard to defendant's request for clarification as to specific class issues.

[7]When the court uses such phrases as "language of the agreement," "loan contract," etc., it apparently is referring to the variable interest rate clause included by the defendant in the promissory notes.

loans up to one full percent per year and it is not required to equate the interest rate increases with the dividend rate increases.

"3. The defendant's interest rate increases effected in 1966 were based on the increases in its dividend rate paid on its regular passbook accounts. Although the 1966 loan rate increases were not equal to the dividend rate increases of the defendant, they were nevertheless valid and within the terms of the loan contract.

"4. The defendant was not guilty of fraud or misrepresentation in the use of its variable interest rate clauses in 1966 or in 1970."

The plaintiff's motion for a partial summary judgment was granted as follows:

"1. The language of the defendant's variable interest rate clauses executed prior to 1970 allowed an increase in the defendant's loan rate only upon an increase in the basic rate paid upon passbook savings accounts.

"2. The defendant's 1970 interest rate increases on its loans were not based on any corresponding increase in the dividend rate paid on the defendant's passbook savings accounts.

"3. The defendant's 1970 interest rate increases on its loans were in breach of its statutory obligations, were not within any allowable construction of its promissory notes and were and are, void and of no force or effect."

The defendant generally appeals from that portion of the judgment which decreed that its 1970 increase in interest rates on its loans was void and of no effect. Plaintiff cross-appeals from that portion of the judgment declaring that the variable interest rate clause was legal, the 1966 loan rate increases were valid, and defendant was not required to equate the interest rate increases on its loans with its increases in the dividend rates.

Before proceeding to the various contentions of the parties, we must first consider the effect of our ruling in *Powell* v. *Central Cal. Fed. Sav. & Loan Assn.* (1976) 59 Cal.App.3d 540 [130 Cal.Rptr. 635] (hg. den.) upon the facts of this case.

In *Powell,* plaintiffs attacked similar variable interest rate provisions on the basis they were ambiguous, constituted contracts of adhesion and, as utilized by defendant, would result in balloon payments at the end of the loan terms in violation of the Federal Home Loan Bank Board's regulations. (*Id.,* at p. 547.) We rejected these contentions.

In that case we held that the variable interest clauses did not violate 12 Code of Federal Regulations section 541.14 which sets forth certain requirements with regard to "installment loans." (*Id.,* at pp. 548-549.) Thus, a federal savings and loan association is not prohibited from increasing monthly payments on its loans to meet a raise in the *interest* rate.

Secondly, we rejected the argument that the variable interest clauses were illusory, stating: "In the instant case, the trial court made an express determination (stated as a conclusion of law) that the 1 percent increase invoked by defendant was reasonable. Regardless of whether the question of reasonableness is one of law or fact, and regardless of whether the relevant interest increases paid by defendant to holders of its 'savings' accounts were those applicable to all types of accounts or should have been limited to savings passbook accounts (and, perhaps, to the two bonus accounts offered in 1967), we are of the opinion that the trial court's ruling was correct. We do not find a 1 percent variable interest increase unreasonable when compared with depositors' interest increases of, respectively, .25 percent and .15 percent (for savings passbook accounts only) or .44 percent, .52 percent, and .26 percent (weighted average for all types of accounts). To the extent of allowing a single increase in this amount, there was no ambiguity, and the variable interest provisions were not illusory." (59 Cal.App.3d at pp. 549-550.)[8]

Finally, we held in *Powell* that the promissory notes were not contracts of adhesion. Moreover, we there noted that the issue of adhesion was not really involved. We commented: "We have here held that to the limited extent necessary to sustain a single increase in the interest rate, the notes are not ambiguous and there is no need for interpretation. Accordingly, the classification of the notes as contracts of adhesion, if such were

[8]In *Powell,* we expressly noted that under the doctrine of *Automatic Vending Co.* v. *Wisdom* (1960) 182 Cal.App.2d 354, 357-358 [6 Cal.Rptr. 31], a contracting party's discretionary power to vary the price or other performance does not render the agreement illusory if the party's *actual* exercise of that power is reasonable. (59 Cal.App.3d at p. 549.)

otherwise appropriate, has no significance in this lawsuit." (*Id.,* at p. 551.)[9]

To the extent that these three points are again raised by either the plaintiff or the defendant on this appeal, we adhere to our decision in *Powell.* (See *La Com* v. *Pacific Gas & Electric Co.* (1955) 132 Cal.App.2d 114, 118 [281 P.2d 894, 48 A.L.R.2d 1455]; see also *Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 101 [114 Cal.Rptr. 834].) Such contentions shall therefore receive summary treatment. We turn now to the contentions of the parties.

### DEFENDANT'S CONTENTIONS ON APPEAL

*1970 Increases*

The notes in question generally provide that defendant may increase the interest rate (by a maximum of 1 percent per year) after an increase in the dividend or earning rate paid by defendant to the holders of its savings accounts. In its reconsidered memorandum of decision, the court declared the 1970 increases improper on the basis " . . . plaintiff believed that the variability of the interest he was to pay on his loan would be based on the dividend rate paid by defendant on the type of accounts *then existing,* . . ." In the judgment itself the court states that the clauses allow an increase in loan rates "only upon an increase in the basic rate paid upon passbook savings accounts."[10] ■ The defendant contends that the trial court's construction is erroneous as a matter of law since the phrase is a clear and unambiguous statement of the standard to be used by defendant in utilizing the variable interest provision.

The defendant first notes that by regulatory definition and commonly known practice the earnings or dividends of an association are the funds

[9]The trial court in *Powell* found that the phrases "dividend rate" and "earning rate" as used in the notes were intended to mean " 'the cost of savings' to [the] defendant, i.e., the interest paid by it to depositors." (*Id.,* at p. 545.) On appeal in *Powell,* this finding was not attacked. On the instant appeal, plaintiff claims the meaning of the phrase "dividend or earnings rate" is a central issue since this language is " . . . used as the index of the defendant's right to increase its interest rates in the variable rate clause contained in its promissory notes.' "

[10]In effect, the trial court interpreted the phrase "dividend or earning rate" to mean the passbook rate. Since this particular rate had apparently not been increased from 1966 until the time defendant invoked the clause in 1970, the court held the 1970 increases invalid.

paid to the holders of savings accounts. (See 12 C.F.R. § 544.1(b) (1976) Charter K (rev.) par. 10; § 545.3-1.) In this connection, the term "savings accounts" means all accounts (whether deposits, shares, or other accounts, for fixed, minimum, or indefinite periods of time) of a federal savings and loan association. (12 U.S.C.A. § 1464(b)(1).) Further, the regulations provide: "The term 'savings account' means the monetary interest of the holder thereof in the capital of a Federal mutual association and consists of the withdrawal value of such interest." (12 C.F.R. § 541.4.) Thus, defendant maintains the earning rate paid by the defendant to the holder of its savings accounts is determined by dividing the total amount of savings accounts into the earnings paid thereon. In addition, the defendant presented evidence (through the testimony of its officers) that the variability of the interest rate was based on the cost of the dividends to the defendant on *all* of its savings accounts. In view of the foregoing, defendant concludes the court's assumption is unsupported by any testimony in the record, is contrary to the statutory meaning of the terms in the variable interest provision and to the undisputed construction by defendant's officers.[11]

Defendant concedes that in 1964, at the time of the execution of the loan with plaintiff, defendant was paying dividends at only one rate. Nevertheless, defendant argues the court's order limiting the term "savings accounts" to only the passbook accounts disregards the following facts: (1) During the years 1961 to 1965 defendant had in effect not only a passbook account but also a full-paid certificate account; (2) during this same period, the regulations of the Federal Home Loan Bank Board allowed defendant to pay its savers a higher rate of interest if justified or permitted by earnings since no rate control was in effect at that time; (3) the statutory definition of "savings account" includes all accounts of a federal savings and loan association; and (4) no evidence was offered to support the court's factual assumption that plaintiff believed the provision was limited to changes only in the basic passbook rate.[12] Defendant concludes there was no basis for limiting the phrase "savings accounts" (as used in the variable interest rate clause in the debt

[11]These arguments are particularly telling in view of the rules governing summary judgment. (See, e.g., *Varco-Pruden, Inc.* v. *Hampshire Constr. Co.* (1975) 50 Cal.App.3d 654, 658-659 [123 Cal.Rptr. 606].)

[12]The only apparent statement in the record which seems to reflect the thinking of the plaintiff is found in its letter of April 15, 1971, inquiring about the rate increase. In this letter plaintiff states: "What the above [variable interest] clause implies is that the rate you now pay on savings has gone up 1½%." Plaintiff did not limit application to basic passbook savings.

instruments) to only the accounts then existing or to the regular passbook account.[13]

The plaintiff contends the variable rate clause contained in defendant's notes was properly interpreted by the trial court to permit loan rate increases only upon an increase in the regular rate paid on defendant's savings accounts. Plaintiff bases its argument on four points.

First, it contends defendant's construction and application of the variable rate clause is repugnant to the language of the federal regulations. Plaintiff asserts the regulations have clearly distinguished between the earnings rate paid on savings accounts and "bonuses" paid on special accounts, and hence the term "earnings rate" should also be interpreted to exclude bonus payments or extra earnings paid on special accounts. (See 12 C.F.R. § 544.1(b) par. 10; see also §§ 545.2-1, 545.3 and 545.3-1.) Plaintiff thus rejects defendant's idea that the variable rate clause requires a "complex averaging computation" to determine the rate at which earnings have been distributed on its savings accounts.

Plaintiff next contends that use of the regular rate as the index of the variable rate clause is consistent with the use of the term "dividend rate" by defendant and with the reporting requirements of the Federal Home Loan Bank Board.

Thirdly, plaintiff contends that substitution of defendant's confusing average rate for the regular rate as the index for the variable rate clause would give defendant power to increase its loan rates virtually at will. It submits that defendant's use of the weighted average index for increasing its mortgage loan rates is most advantageous to it as that index is constantly changing and gives defendant the unilateral power to raise its loan rates virtually at will. Under all the circumstances, the advantage becomes unconscionable.

Finally, plaintiff maintains that defendant's construction of the variable rate clause flagrantly violates well-established rules of construc-

---

[13]According to defendant, federal legislation in 1966 established many new classes of savings accounts on which varying maximum rates were payable. (12 U.S.C.A. § 1425b.) Historically, "[t]he practical effect of such legislation as implemented by the Federal Home Loan Bank Board was that associations no longer were able to exercise their judgment as to what rate to pay, since the maximum permissible rate promulgated by the Board immediately became the minimum competitive rates in the savings and loan industry." Defendant submits that in order to preserve the intent of the variable rate clause, it must be construed to include all of these new types of savings accounts.

tion. Plaintiff is arguing, of course, that the promissory note is a contract of adhesion and therefore the variable rate provision should be construed strictly against defendant. Even assuming, however, that there is an ambiguity in the language used (i.e., "dividend or earning rate"), we considered and rejected a similar argument in *Powell,* and that same reasoning applies here. (See *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882-883 [27 Cal.Rptr. 172, 377 P.2d 284].)[14]

It would appear to us that the plaintiff (and to some extent, the defendant) has overly complicated this entire matter. In our opinion the term "dividend or earning rate" includes the cost of dividends or earnings on *all* of defendant's savings accounts. We think it is clear under all of the circumstances present here, and in view of the purpose of the variable rate clause, that the phraseology refers to the cost of savings (or money) to the defendant, i.e., the interest paid by it to depositors.[15] This appears to us to be the only common sense construction of the term. Such a construction is consonant with modern business practices (see fns. 2 and 6) and provides the needed flexibility for both parties to the note. As we have previously noted, the construction is also borne out by the terms of the federal statute. We inferentially recognized this conclusion in *Powell* when we found an interest increase to be reasonable which was based on a weighted average for all types of accounts. (*Powell,* 59 Cal.App.3d at p. 550.) Our opinion is reinforced by the complete lack of supporting data for the trial court's opinion which narrowly limits the phrase to increases paid on passbook accounts. We therefore hold that the 1970 increases were valid and hence that portion of the summary judgment must be reversed.

PLAINTIFF'S CONTENTIONS ON CROSS-APPEAL

1. *1966 Increases; Balloon Payments.*

On its cross-appeal, plaintiff first contends the 1966 increases were invalid because they created balloon payments[16] and were imple-

---

[14]In passing we note that plaintiff appears to be a sophisticated investment partnership, holding several properties and doing business with several lenders. We also note that plaintiff suggests that the construction of the rate clause to meet "changed conditions" (as contended for by defendant) violates public policy. (See Civ. Code, § 1916.5 [variable interest rate—provisions for validity].) That section, enacted in 1970, applies only to loans executed after that date. (See *Trotsky* v. *Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 142 [121 Cal.Rptr. 637].)

[15]We attribute the same meaning to the phrase as did the trial court in *Powell.* (59 Cal.App.3d at p. 545.)

[16]Plaintiff maintains that the increase in interest rates by defendant necessarily diminished the principal amortization on defendant's loan, thus requiring "illegal"

mented by unauthorized increases in monthly installment plans. Plaintiff also argues that the 1966 increases were invalid because the increases in monthly installment payments required to collect the added interest were also prohibited by federal regulations. (See 12 C.F.R. § 541.14.)

We rejected this precise contention in *Powell* (59 Cal.App.3d at pp. 547-549) and hence these two interrelated arguments require ·no further discussion.[17]

## 2. *Equality of Increases*

■ Plaintiff next contends that the language of the variable interest rate clause should have been interpreted to allow increases only in the amount of the actual increases in defendant's regular (passbook) rates. Plaintiff is apparently asking this court to read into the language of the variable interest provision a limitation restricting the amount of interest increases to the *exact* amount of savings rate increases. Plaintiff relies upon its assertion that the contract is adhesive in character. We rejected such an argument in *Powell.* (59 Cal.App.3d at pp. 550-551.) Under the facts present here, we can find no reason in law or equity to support the plaintiff's contention. And, as we noted in *Powell,* the actions of the defendant in this area have been reasonable and not in bad faith or arbitrary. (*Id.,* at pp. 549-550; cf. *Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484-485 [289 P.2d 785, 49 A.L.R.2d 496]; *Automatic Vending Co.* v. *Wisdom* (1960) 182 Cal.App.2d 354, 357-358 [6 Cal.Rptr. 31].)

## 3. *Constructive Fraud*

Finally, plaintiff contends defendant should be held liable to all class members for constructive fraud as a matter of law (see Civ. Code,

balloon payments at the end of the loan. As we pointed out in *Powell,* however, a raise in the monthly payments to accommodate the higher interest rate did not violate the federal regulations. (*Id.,* at p. 549.)

[17]In its reply brief, defendant makes the following statement: "The Federal Home Loan Bank Board has addressed itself specifically to the question in Interpretive Memorandum T-56 which states in applicable part,

'*Loans made prior to April 10, 1972,* that Federal associations may, within the original loan term, exercise their contractual right to increase the interest rate of their loan under an escalation clause contained in the loan contract or other debt instrument. In the alternative, the monthly payment may be increased and the maturity of the loan may be extended.'

"Based on T-56, the Association could legally and properly exercise its increase in the variable interest provision through extending the loan term or increasing the monthly payment."

§ 1573), and should be ordered to refund the interest collected as a result of the 1966 rate increases, as well as the 1970 increases.

This contention is without merit. Plaintiff produced no proof of any fraudulent conduct, constructive or otherwise, on the part of defendant. Our examination of the record reveals none.

That portion of the judgment rendered in favor of the plaintiff (relative to the 1970 interest increases, and including the matters concerning class recovery) is reversed and the trial court is directed to enter judgment for the defendant. The remainder of the judgment in favor of defendant is affirmed in its entirety. Since we have decided in favor of the defendant with regard to the 1970 increases, we do not reach the remaining questions raised by defendant.

Puglia, P. J., and Janes, J., concurred.

The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied May 5, 1977.