**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 22 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KJ-PARK, LLC, a California limited liability company,<br><br>          Plaintiff-ctr-defendant - Appellant,<br><br>  v.<br><br>MATCH GROUP, LLC, a Delaware limited liability company and MATCH GROUP, INC., a Delaware corporation,<br><br>          Defendant-ctr-claimants - Appellees. | No. 24-6615<br>No. 25-1007<br><br>D.C. No. 5:23-cv-02346-VKD<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Virginia K. DeMarchi, District Judge, Presiding

Argued and Submitted November 18, 2025
San Francisco, California

Before: BOGGS,[**] BRESS, and MENDOZA, Circuit Judges.
Dissent by Judge BRESS.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Danny J. Boggs, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

On October 26, 2018, KJ-Park, LLC and Match Group, LLC executed an Office Lease for a building at 2555 Park Boulevard in the City of Palo Alto. Plaintiff KJ-Park, LLC ("KJ-Park") claims that defendants Match Group, LLC and Match Group, Inc. (collectively, "Match") breached the lease agreement and a guaranty by terminating the lease, and owe KJ-Park at least $6,986,605 in damages, plus additional unpaid rent. Match counterclaims for breach of contract and monies had and received, claiming that it properly terminated the lease agreement pursuant to KJ-Park's breach. KJ-Park moved for partial summary judgment on its breach-of-contract claim, and Match moved for summary judgment on KJ-Park's claims and its counterclaims. The lower court granted Match summary judgment on KJ-Park's claims, denied partial summary judgment to KJ-Park, granted Match summary judgment on its counterclaims, and awarded fees and costs to Match.

We review de novo a district court's grant of summary judgment. *Szajer v. City of Los Angeles,* 632 F.3d 607, 610 (9th Cir. 2011). We have jurisdiction under 28 U.S.C. § 1291, and reverse and remand for further proceedings consistent with this memorandum disposition.

1. To succeed on its motion for summary judgment, Match must show that there was no genuine dispute of material fact that Match had the right to terminate under the lease. Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The court does not engage in credibility determinations or weigh evidence; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). This standard does not change when the parties present cross-motions for summary judgment. Rather, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

2. On October 26, 2015, the City adopted Ordinance No. 5358 ("Ordinance"), which amended the City's retail zoning regulation for the CC(2) zoning district to require new construction to have ground-level retail space. The Ordinance took effect on November 26, 2015. The original and all subsequent construction approvals and the lease all described a building with three floors of office space, without retail on the ground floor. After the completion of the construction of the base, shell, and core of the building, in March 2019, confusion arose as to whether the Ordinance applied to the Building.

Match argues that the Ordinance applies to the Building and that it therefore appropriately terminated the lease pursuant to its rights under Section 2.3. That section reads:

> Delivery Date; Delayed Delivery Date. . . . If the Delivery Date shall not occur on or before March 1, 2019 (which date shall be extended by the number of

3

days of any Tenant Delays and Force Majeure), then until the Delivery Date occurs . . . Tenant shall have the right to terminate this Lease, by notice to Landlord on or before the 15th day following the Delivery Date, whereupon this Lease shall terminate, and Landlord and Tenant shall have no further obligations or liabilities under this Lease (other than those stated in this Lease to survive the expiration date) . . . .

(the "Termination Clause").

Match alleges that KJ-Park failed to deliver the premises to Match in "Delivery Condition" by March 1, 2019. The lease states:

As used in this Section 1.1, the term **"Delivery Condition"** shall mean the Base, Shell and Core for the Premises being in a construction-ready condition, which condition shall mean the substantial completion of the items set forth on **Schedule 1**, attached hereto, and Landlord shall have delivered to Tenant an AIA Form G704 Certificate of Substantial Completion with regard to the Landlord Work, executed by Landlord's architect and possession of the Premises in broom-clean condition . . . .

Match argues that the Building's non-compliance with the Ordinance means that KJ-Park failed to deliver the building "in compliance with Applicable Law" pursuant to the Landlord Work provision mentioned in the AIA Form G704 Certificate of Substantial Completion ("Certificate") delivery provision, and therefore there was no "Substantial Completion" of the Landlord Work. The provision on Landlord Work provides:

Landlord shall construct or shall cause the construction of, at its sole cost and expense, the base, shell, and core of the Building, which base, shell and core shall be in compliance with Applicable Law (to the extent necessary for Tenant to obtain and retain a certificate of occupancy or its legal equivalent for the Premises for general office use) . . . .

4

To be entitled to summary judgment, Match must show that there is no genuine dispute of material fact that (1) the Ordinance prohibited Match's use of all three floors of the Building for "general office use," which (2) means that the Building was not in compliance with "Applicable Law" as required by Section 1.1 of the contract, incorporated via the Certificate requirement. KJ-Park argues for the first time on appeal that the Ordinance was not Applicable Law under the Landlord Work provision of the lease.

3. In California, the interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence. *GGIS Ins. Servs., Inc. v. Superior Ct.*, 168 Cal. App. 4th 1493, 1507 (2008) (citing *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965)). Where no extrinsic evidence of the meaning of the contract is introduced, an appellate court will independently construe the contract. *Wolf v. Superior Ct.*, 114 Cal. App. 4th 1343, 1359 (2004). The duty of the appellate court to independently construe the contract is not optional. *Stanford Ranch v. Md. Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996) ("It is the duty of the appellate court to make its own independent determination of the meaning of the language used in the contract under consideration."). Both Match and KJ-Park agreed that the meaning of the contract was a matter of law with no need for extrinsic evidence.[1]

---

[1] Oral Argument at 12:35, 41:02, KJ-Park, LLC v. Match Group, LLC, et al., (No.

We therefore independently construe the contract and hold that the Ordinance is not "Applicable Law" under Section 1.1. The relevant section specifies that the "**base, shell and core** shall be in compliance with Applicable Law" (emphasis added). But the Ordinance was related to the *use* of the first floor, not the construction of it, and the interior build-out was the responsibility of the tenant Match, not the landlord KJ-Park. It is hard to argue that the base, shell, and core are either in *or* out of compliance with the Ordinance at all; the Ordinance is a *zoning* regulation that required that the first floor of the building be *used* for retail space, a "use restriction or zoning ordinance[] regarding the Premises' *built-out interior*." To read the requirement that the base, shell, and core (KJ-Park's undisputed responsibility) be "in compliance with Applicable Law" as a requirement that the whole *building*— in its eventual (and, as KJ-Park points out, "non-existent") "final-build-out use" state—be "in compliance with Applicable Law" goes further than the text of the contract contemplates.

Indeed, the district court recognized a distinction between the "base, shell and core" (which KJ-Park had a building permit to construct and responsibility for under the lease) and the specific occupancy rights of the building. *KJ-Park, LLC v. Match Group, LLC*, 2024 U.S. Dist. LEXIS 158145, at *10–11 ("the term 'warm shell'

---

24-6615), https://www.ca9.uscourts.gov/media/video/?20251118/24-6615.

refs to a 'building without the interior tenant spaces built out' and no 'specific occupancy'"). If KJ-Park's "base, shell and core" obligation implies no "specific occupancy," then the Ordinance, which imposes only use and occupancy requirements, can't possibly be "Applicable Law."

As further indication that compliance with the Ordinance was not KJ-Park's responsibility under the lease, Section 1.2 of the Tenant Work Letter, titled "Landlord Warranty Period," (immediately following the Delivery Condition and Landlord Work sections) states:

> Upon the date Landlord delivers possession of the Premises to Tenant, the Landlord Work . . . shall comply with all Applicable Laws, including applicable building and construction codes and the requirements of all applicable municipal agencies which were enacted and enforced as of the Delivery Date, to the extent required in order for Tenant to obtain a certificate of occupancy, or its legal equivalent, for the Premises (**excluding any compliance obligations triggered by Tenant's specific use of**, or alterations to**, the Premises**), or to otherwise obtain a construction permit (excluding construction permits that trigger a compliance with law obligation solely due to the nature of Tenant's improvement or alteration (as opposed to a compliance with law obligation that would be triggered merely by pulling any construction permit)) . . . .

(emphasis added).

In short, the contract assigns responsibility to KJ-Park for constructing the parts of the Building it was responsible for—the base, shell, and core—in compliance with applicable laws. However, these requirements specifically "exclude[d] any compliance obligations triggered by [Match]'s specific use of . . . the premises." Similarly, KJ-Park was not responsible for compliance with laws required to obtain

a construction permit that were "solely due to the nature of Tenant's improvement or alteration" and specifically contrasts this with "a compliance with law obligation that would be triggered merely by pulling *any* construction permit." The lease makes KJ-Park responsible for the "base, shell and core" only. Nor does this interpretation "strain[] logic," as Match argues; it assigns compliance to the party responsible for the relevant construction. Even in its own termination letter, Match acknowledged that the March 28, 2019, final inspection approvals from the City "evidence that the Base, Shell and Core were in compliance with Applicable Law."

Because the Ordinance was not "Applicable Law" under the contract, Match was not entitled to terminate the lease and there is no need to reach the issue of whether the Building was in compliance with the Ordinance. Therefore, we conclude that Match was not entitled to summary judgment on KJ-Park's breach-of-contract claim or its counterclaims.

5. Both parties agree that if we reverse on the breach-of-contract claim, we should also reverse summary judgment on the breach-of-guaranty claim. California courts apply the same legal standard to breach-of-guaranty and breach-of-contract claims. *Gerritsen v. Warner Bros. Ent. Inc.,* 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015).

The grant of summary judgment for Match on KJ-Park's breach-of-contract and breach-of-guarantee claims and its counterclaims for breach of contract and

money had and received is **REVERSED and REMANDED**. The award of fees and costs is **VACATED**. The denial as moot of *Daubert* motions regarding damages experts Craig Owyang and Josh Fronen is **VACATED**.



*KJ-Park, LLC v. Match Group, LLC*, No. 24-6615; No. 25-1007.

BRESS, Circuit Judge, dissenting:

There is some question as to whether the lease agreement between lessor KJ-Park and lessee Match Group, which required KJ-Park to provide a base, shell, and core of the project building "in compliance with Applicable Law," imposed on KJ-Park the duty to comply with the City of Palo Alto's Ordinance No. 5358. The problem is that KJ-Park did not raise that argument at any point during the proceedings below, as the majority concedes. Instead, KJ-Park argued that it had a vested right to use the building free from the requirements of the City's Ordinance. In fact, during the hearing on the motion for summary judgment below, KJ-Park conceded that if the district court rejected its vested rights theory, any argument that the lease was breached by Match Group's termination would be "put[] to rest" and "we would be done." As the district court explained in the decision on review, "[a]t the motion hearing, KJ-Park conceded that if the Court found no vested legal right, then there would be nothing left to try with respect to KJ-Park's claims regarding breach of the Lease and breach of the Guaranty."

Before the district court, KJ-Park thus accepted that it was contractually required to ensure that Match Group's intended use of the building would be permitted by Ordinance No. 5358, or that it had secured the City's agreement that the Ordinance did not apply (the vested rights theory). Ordinance No. 5358, in other

1

words, was KJ-Park's problem to deal with. The record and the district court's decision indicate that all parties were operating under that understanding before this appeal. Considering KJ-Park's failure to make any contrary argument below, and its affirmative concession to the district court that everything turned on the vested rights theory, I would find that KJ-Park waived its newly minted contract interpretation argument. *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1442 (9th Cir. 1994) ("An appellate court will dismiss arguments not raised at the district court unless there are exceptional circumstances.").

The majority ignores KJ-Park's concession below and, with it, the entire course of litigation in the district court. Of equal concern, instead of remanding for the district court to consider KJ-Park's new argument in the first instance, the majority forges ahead and resolves it on its own. This is inadvisable. KJ's Park's new argument that Ordinance No. 5358 does not implicate the "Applicable Law" provision requires interpretation of various interrelated clauses in a lengthy commercial construction and lease contract. The most pertinent clause assigns KJ-Park the responsibility to construct a "base, shell, and core" "in compliance with Applicable Law (to the extent necessary for Tenant to obtain and retain a certificate of occupancy or its legal equivalent for the Premises for general office use)." That clause could indicate, as the majority concludes, that the only "Applicable Law" implicated by the contract are laws relating to construction of the base, shell, and

2

core of the building, meaning that use-related ordinances do not affect KJ-Park's obligations.

But that is not an inevitable reading. The provision in question requires compliance with "Applicable Law" "to the extent necessary" for Match Group to obtain a "certificate of occupancy . . . for *general office use*." And here, the City's Ordinance prohibited Match Group from using the first floor for general office use. Furthermore, the lease explicitly contemplates that Match Group was to use the building for office space alone and prohibited any retail use. Belying KJ-Park's new argument that Ordinance No. 5358 was not its responsibility, KJ-Park negotiated extensively with the City over this issue. Considering these various conflicting signals, I would be reluctant to resolve this question of contract interpretation for the first time on appeal.

In circumstances involving sophisticated contracts with ambiguous provisions, courts often consider evidence of trade usage and commercial customs. *See Dillingham-Ray Wilson v. City of Los Angeles*, 106 Cal. Rptr. 3d 691, 699 (Cal. Ct. App. 2010). Contrary to the majority, I do not understand the parties at oral argument to have disclaimed the need for extrinsic evidence. At most, it appears that both sides argued that, if this court were prepared to ignore KJ-Park's concession below, that both sides think they should still win as a matter of law. But it may be that neither side should win as a matter of law on KJ-Park's new argument, at least

3

not without some further understanding of how the commercial lease provision at issue here is supposed to operate. This is a further reason why the majority errs in reaching and resolving this issue for the first time on appeal.

The only issue remaining—and the only issue put to the district court—is whether KJ-Park may rely on a vested rights theory to show that the building was in conformity with all "Applicable Law" when Match Group exercised its termination right, assuming Ordinance No. 5358 was "Applicable Law." In my view, the district court correctly rejected the vested rights argument. In California, the doctrine of vested rights provides that "a property owner who, in good faith reliance on a government permit, has performed substantial work and incurred substantial liabilities has a vested right to complete construction under the permit and to use the premises as the permit allows." *Communities for a Better Env't v. S. Coast Air Quality Mgmt. Dist.*, 226 P.3d 985, 994 (Cal. 2010). The doctrine operates as a defense against enforcement by a local government of a zoning ordinance under those circumstances. *See id.*

As the district court observed, KJ-Park identified no authority for the proposition that a party can invoke the vested rights doctrine as a sword in a breach of contract dispute against a private party. In my view, this case shows why extension of that doctrine to such a scenario is generally unwarranted. The City expressed uncertainty over whether Ordinance No. 5358 would apply to the project

4

and held the project up for multiple months. Match Group was required to delay planning its internal build-out and was left uncertain whether it would ever be able to operate the building in accordance with its intended use as an office on all floors. Regardless of whether KJ-Park had a viable vested rights defense against application of the ordinance by the City, it makes little sense to require Match Group to sit idly by and hope for a favorable resolution of KJ-Park's dispute with the City.

Because I would also conclude that KJ-Park cannot invoke the vested rights theory against Match Group, I would affirm the district court's grant of summary judgment in favor of Match Group on KJ-Park's breach of contract claim and on Match Group's counterclaim.